Ronald Alfred WILLIAMS, Appellee

v.

Sgt. MUSSOMELLI; Robert Whitesell, Correctional Officer I; John Weaver, Correctional Officer I; Robert Miller, Sgt. Correctional Officer; Robert Horvat, Correctional Officer I; State Correctional Institution At Pittsburgh, P.O. Box 9901, Pittsburgh, Pennsylvania, 15233.

Appeal of Robert WHITESELL.

United States of America, Intervenor.

No. 83–5035.

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1983.

Decided Dec. 6, 1983.

Sherree L. Sturgis (argued), Chief Counsel, Bureau of Correction, Commonwealth of Pa., Camp Hill, Pa., for appellant.

Harry S. Cohen (argued), Trushel, Wood & Israel, Pittsburgh, Pa., for appellee.

Michael F. Hertz (argued), Appellate Litigation Counsel, Civil Div., U.S. Dept. of Justice, Washington, D.C., for intervenor.

Before ALDISERT, HUNTER and WEIS, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

The magistrate trying this case in the district court instructed the jury that "grossly excessive force" used by a prison guard against an inmate would constitute a violation of the eighth amendment. We conclude that when the charge is read as a whole, this language and other similar phraseology adequately expressed the appropriate standard. We also find applicable a decision of this court in a companion case that upholds the authority of a magistrate to conduct trials and enter judgments. We therefore affirm the judgment entered on a verdict in favor of the plaintiff inmate.

The plaintiff's civil rights complaint against several prison guards alleged mistreatment violative of the eighth amendment. By consent of the parties, the case was tried by a magistrate sitting with a jury. Plaintiff was awarded $3,500 in compensatory damages against Robert Whitesell, and the other defendants were absolved of responsibility. Whitesell's motion for a new trial was denied.

Plaintiff testified that on June 16, 1977, while an inmate at the Western State Penitentiary in Pittsburgh, Pennsylvania, he was taken to the "strip and search" room. He was ordered to remove his clothes, and as he began to do so, Officer Whitesell directed him to open his mouth. Plaintiff refused, even after the order was repeated. Whitesell then put his hands on the plaintiff's throat, apparently in an attempt to prevent him from swallowing anything that might be in his mouth. Plaintiff pushed Whitesell away, and then was attacked by him and other guards who proceeded to punch and kick plaintiff.

He was soon handcuffed and knocked to the floor. The guards continued to kick plaintiff as he lay on the floor. He bled from his nose and mouth. After a superior officer stopped the beating, several guards took plaintiff to the prison infirmary where he remained until the following day.

The magistrate charged the jury that, as an inmate, plaintiff had the right under the eighth amendment "not to be subjected to unnecessary, unreasonable, and grossly excessive force by prison officials." She also explained that prison officials are permitted to use force when necessary to maintain discipline or control prisoners, but they may not use force "which violates the standards of decency more or less universally accepted." The jury was instructed that in coming to its decision it should consider the need for application of force, the relationship between that need and amount of force used, the extent of plaintiff's injuries, and last "whether each defendant applied force in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm to the plaintiff."

The magistrate's jury charge adopted either the verbiage or substance of most of the three points for charge submitted by the defense. She declined to instruct the jury that the defendants' actions would constitute cruel and unusual punishment only if their conduct was "physically barbarous, shocking to the conscience, contrary to notions of dignity, humanity, and decency, or such as to offend sensibilities, shock the conscience or constitute brutality."

The jury's answers to special interrogatories found that Whitesell had used unreasonable and grossly excessive force, causing the plaintiff's injuries. The jury refused to award punitive damages, finding that Whitesell did not act with malice or wrongful intent.

Defendant appeals on the sole ground that the trial magistrate did not adequately explain the eighth amendment standard and thus failed to establish the distinction between a common law tort claim and one which rises to a constitutional one.

I

█ Before addressing the merits, we must consider a jurisdictional matter. A panel of the Court of Appeals for the Ninth Circuit has held unconstitutional 28 U.S.C. § 636(c) (Supp. V. 1981), the statute authorizing trial by a magistrate on consent of the parties. *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.,* 712 F.2d 1305 (9th Cir.1983), *rehearing in banc granted,* 718 F.2d 971 (9th Cir.1983). In reaching that conclusion, the panel relied on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Because the *Pacemaker* decision denies the power of a magistrate to conduct a trial and enter a judgment, we raised the constitutional question *sua sponte.* Since the parties had already filed their principal briefs, we asked for supplemental briefing and oral argument on the point. The Attorney General of the United States intervened and participated in this appeal.

Another panel of this court also raised the same jurisdictional issue in *Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983), and held the statute constitutional. We adopt the rationale of the *Wharton-Thomas* opinion, apply it without reservation to the case at hand, and hold, therefore, that 28 U.S.C. § 636(c) is constitutional. Accordingly, the magistrate had authority to try the case and enter judgment on the verdict of the jury.

II

█ We turn then to the merits. The eighth amendment prohibition against cruel and unusual punishment admits of several dimensions. It limits the power of the legislative body to establish penalties for crimes, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), restricts the courts when sentencing convicted defendants, *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), and protects prisoners from excesses of prison authorities in the executive branch, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The precedents established in one context do not always transfer comfortably to another and therefore must be read with the appropriate distinctions in mind.

This case treats only the eighth amendment protections accorded persons in custody, an area in which the law is not yet

clearly defined. It is established that pretrial detainees are protected by the due process clause of the fifth and fourteenth amendments, not the cruel and unusual punishment clause of the eighth amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671–672 n. 40, 97 S.Ct. 1401, 1412–1413 n. 40, 51 L.Ed.2d 711 (1977); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1079–1080 (3d Cir.1976). But as to sentenced prisoners some uncertainty remains as to whether a particular occurrence more properly comes within the due process clause or the eighth amendment.

In *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.1973), Judge Friendly thought that the concept of "punishment" was limited to "instances of deliberate administration for a penal or disciplinary purpose with the apparent authorization of high prison officials." Thus, although a spontaneous attack by a guard might be " 'cruel' and we hope, 'unusual', it does not fit any ordinary concept of 'punishment.' " *Id.*

This court has held the due process clause was a proper source for a claim by a prisoner alleging failure of a guard to afford adequate protection against an attack by another inmate. *Curtis v. Everette,* 489 F.2d 516 (3d Cir.1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). We were presented with a claim for damages arising out of an isolated incident of prison guard brutality in *Rhodes v. Robinson,* 612 F.2d 766 (3d Cir.1979). Although we acknowledged authority distinguishing between eighth amendment and due process claims, it was not necessary to determine the proper basis for Rhodes' claim, because as a general proposition both clauses extended "protection from an official's abusive exercise of his powers to inflict grossly undue harm." *Id.* at 772.[1]

Nor does the case at hand present the problem of distinguishing between application of the eighth amendment and the due process clause. The defendants did not raise the issue on appeal or at the trial. Indeed, one of the cases cited by the defense in support of its request for charge was *Johnson v. Glick,* where the distinction between the two sources was discussed.

Moreover, we are not persuaded that, in the circumstances here the standard imposed on the defendants would be any different. In any event, since the parties did not contest the invocation of the eighth amendment in this civil case, we proceed to review it on that constitutional basis.

It is clear that a prisoner's claim under the eighth amendment must establish more egregious conduct than that adequate to support a common law tort. As the Supreme Court observed in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *See also Howell v. Cataldi,* 464 F.2d 272, 277 (3d Cir.1972). The magistrate recognized the need to articulate the distinction between a tort standard and the more flagrant conduct that violates the eighth amendment. Her charge to the jury noted that prison officials have an occasional need to use force and emphasized the more demanding requirements necessary for plaintiff to recover. He had to prove that the defendants' use of force was a violation under the standard articulated—"unreasonable"; "grossly excessive"; "violates standards of decency more or less universally accepted."

In *Howell v. Cataldi,* where a handcuffed prisoner was beaten by police officers, we said a violation of the eighth amendment would occur where "the use of force is grossly excessive to that necessary under

---

1. In *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court was confronted with whether punitive damages were properly awarded against a guard for failure to protect an inmate from attack by other prisoners. In presenting his eighth amendment claim, the plaintiff relied on the "callous indif-

ference" standard, apparently derived from the denial of medical care reviewed in *Estelle v. Gamble.* The only issue before the Supreme Court was whether punitive damages were appropriate in a § 1983 case, and whether the eighth amendment was properly invoked was neither raised nor decided.

the circumstances." 464 F.2d at 281. *Rhodes v. Robinson* defined the amendment as proscribing the "wanton and unnecessary infliction of pain upon persons in custody.... The test of 'cruel and unusual' is a strict one which considers whether the infliction grossly exceeds the legitimate need for force and violates the standards of contemporary society." 612 F.2d at 771.

The defense asserts that the trial magistrate should have used such terminology as "physically barbarous",[2] "shocking to the conscience", and "intolerable to fundamental fairness." We view the argument as one of semantics, not substance.

 The purpose of a charge is to convey legal concepts to a jury of lay persons. Trial judges may choose from an extensive dictionary of terms, words that adequately express the appropriate precepts. If the instructions are accurate in substance and understandable to lay persons, the failure to use the exact words requested by counsel is not reversible error. *James v. Continental Insurance Co.,* 424 F.2d 1064 (3d Cir.1970).

Some concepts necessarily must be expressed in general, non-precise terms. The definition of negligence, the want of due care under the circumstances, is hardly razor sharp in expression. So too, the point at which conduct crosses the line separating an ordinary tort from the prohibitions of the eighth amendment cannot be described with mathematical certainty. Once the trial judge decides that the evidence is adequate to submit to the jury, the determination of whether the standard of liability has been met must be left to the common sense of the jury.

We doubt that jurors would find any difference of moment between the phraseology used by the trial magistrate and that desired by the defense. "Unnecessary, unreasonable, and grossly excessive" are strong words. In our view "grossly excessive" would not convey a measurably different idea to a juror than would "shocking to the conscience" or "brutality." In using the clause, "which violates the standards of de-cency more or less universally accepted," the magistrate closely followed the defense's requested charge—"contrary to notions of dignity, humanity, and decency."

In sum, the charge adequately conveyed the principles necessary to guide the jurors' deliberation. As a whole, the instructions delineated the demarcation between a mere tort and a constitutional violation. Other words might have expressed the same notion more forcefully, but the ones used did not reduce the constitutional standard so that the instruction would constitute reversible error. Accordingly, the judgment of the district court will be affirmed.

---

**2.** In *Estelle v. Gamble,* Justice Marshall wrote that "the amendment proscribes more than physically barbarous punishments." It "em-bodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency....'" 429 U.S. at 102, 97 S.Ct. at 290.