Inmate 115235, C.A. KRUGER, Petitioner,

v.

Robert ERICKSON, et al., Respondents.

Civ. No. 4–94–44.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 2, 1995.

Clark A. Kruger, pro se.

Asst. Atty. Gen. Thomas Erik Bailey, for defendants.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on petitioner's objection to the September 16, 1994, Report and Recommendation issued by the Honorable Franklin L. Noel, United States Magistrate Judge. The Magistrate recommended that petitioner's application for a writ of habeas corpus be denied. Petitioner filed his timely objection to the Report, pursuant to Local Rule 72.1(c)(2).

After a *de novo* review of the record herein, the Court adopts as its Order the Magistrate's Report and Recommendation appended hereto.

IT IS SO ORDERED.

## REPORT & RECOMMENDATION

NOEL, United States Magistrate Judge.

THIS MATTER is before the Undersigned United States Magistrate Judge on petitioner's application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. It has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, the undersigned recommends that petitioner's application for writ of habeas corpus be denied.

## I. *PROCEDURAL AND FACTUAL BACKGROUND.*

Petitioner Clark A. Kruger, inmate no. 115235, is currently incarcerated at the Minnesota Correctional Facility at Stillwater ("MCF–STW"), serving a twenty year sentence for kidnapping.[1] *See* Affidavit of Suzan Huber ("Huber Aff."), para. 3. His scheduled release date is July 10, 2003.[2] *Id.*

On February 12, 1991, petitioner filed a § 1983 action in state court claiming that prison officials violated his civil rights. *See* Affidavit of Thomas Erik Bailey ("Bailey Aff."), para. 2. Prison officials had ordered petitioner to provide them with a blood sample for DNA analysis as required by Minn. Stat. § 609.3461.[3] Petitioner argued that taking his blood violated his right to be free from unreasonable searches and seizures and cruel and unusual punishment. *Id.*, Ex. B, p. 1 (State District Court Judge Albertson's Memorandum). He further argued that it violated: his right against self-incrimination, his due process rights and his protection from *ex post facto* laws. *Id.*

The district court granted defendants' motion for summary judgment. *Id.*, Ex. B, p. 1 (Order and Order of Judgment). The Minnesota Court of Appeals affirmed. *Id.*, Ex. C. The Minnesota Supreme Court denied further review of the case. *Id.*, Ex. F.

On January 14, 1994, petitioner filed his petition for writ of habeas corpus. He includes the same claims that he alleged in his § 1983 action, with the exception of his self-incrimination claim.

## II. *CLAIMS PRESENTED.*

Petitioner alleges that being ordered to provide a blood sample for DNA analysis violated his rights to be free of unreasonable searches and seizures, and cruel and unusual punishment. He further argues that this

---

1. He was also convicted of first-degree criminal sexual conduct. That sentence has expired.

2. Upon completion of his sentence, petitioner will be placed in the custody of the Minnesota Department of Human Services for commitment to the Minnesota Security Hospital in St. Peter as a psychopathic personality under Minn.Stat. § 526.09. *See* Huber Aff., para. 6.

3. Minn.Stat. § 609.3461 (Supp.1994), **"DNA Analysis of Sex Offenders Required,"** provides in pertinent part:

 Subd. 2. **Before release.** If a person convicted of violating or attempting to violate section 609.342, 609.343, 609.344, or 609.345, or

initially charged with violating one of those sections and convicted of another offense arising out of the same set of circumstances, or sentenced as a patterned sex offender under section 609.1352, and committed to the custody of the commissioner of corrections, ... has not provided a biological specimen for the purpose of DNA analysis, the commissioner of corrections or local corrections authority shall order the person to provide a biological specimen for the purpose of DNA analysis before completion of the person's term of imprisonment. The commissioner of corrections or local corrections authority shall forward the sample to the bureau of criminal apprehension.

violated his due process rights and protection from *ex post facto* laws.[4]

## III. *CONCLUSIONS OF LAW.*

For the reasons discussed below, the undersigned recommends that petitioner's application for writ of habeas corpus be denied.

### A. *Exhaustion of State Court Remedies.*

■ A habeas corpus petitioner must demonstrate that he has exhausted his available state remedies before a federal court may consider his request for relief. 28 U.S.C. § 2254(b) and (c); *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). This exhaustion requirement is imposed to ensure that state courts have the initial opportunity to determine petitioner's claims with regard to both state and federal law. *Hutchins v. Wainwright*, 715 F.2d 512, 519 (11th Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984). To exhaust his remedies, a state prisoner must present the state courts with the constitutional implications of his petition. *Tyler v. Wyrick*, 730 F.2d 1209, 1210 (8th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 138, 83 L.Ed.2d 78 (1984); *Hall v. Brewer*, 656 F.2d 364 (8th Cir.1981). However, exhaustion of state remedies is not required when it appears that such remedies are futile. *Hawkins v. Higgins*, 898 F.2d 1365 (8th Cir.1990). A decision on the same question of law, under almost identical facts, makes state court remedies futile. *Id.* (*citing Piercy v. Black*, 801 F.2d 1075, 1078 (8th Cir.1986)).

■ In his appeal to the Minnesota Court of Appeals, petitioner challenged the constitutionality of officials taking his blood. On October 19, 1993, the Minnesota Supreme Court denied further review of the dismissal of his complaint. *See* Bailey Aff., Ex. F. The claims asserted by petitioner in his petition for habeas relief were presented on direct appeal, and the court therefore concludes that petitioner has exhausted his remedies.

### B. *Standard of Review.*

■ In ruling upon a petition for writ of habeas corpus, the district court is not a trier of fact, except as to facts related to federal constitutional contentions. *Smith v. Armontrout*, 888 F.2d 530, 539 (8th Cir.1989). A state court's findings of fact will not be set aside if they are fairly supported by the record. *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Graham v. Solem*, 728 F.2d 1533 (8th Cir.), *cert. denied*, 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); 28 U.S.C. § 2254(d). The Eighth Circuit stated in *Smith* that:

> Questions of guilt or innocence, the degree of the crime, and the justification for the penalty under state law are all to be decided by the state trial court, subject to direct review on appeal. In a sense, then, innocence is irrelevant in a habeas case: the question is rather whether the conviction and sentence are consistent with the federal Constitution, and this question usually turns, in one form or another, on the fairness of the procedure used in the state courts. For an innocent person to be convicted ... is a terrible thing, but unless the federal Constitution has been violated, it is not the concern of the lower federal courts ...

888 F.2d at 539. Federal courts can only overturn the judgment of the state court if it incorrectly applied a matter of constitutional law to the facts in issue. *Sumner*, 455 U.S. at 594, 102 S.Ct. at 1305. When state court findings have the necessary support, Section 2254(d) requires that the federal courts "face up to any disagreement as to the facts and to defer to the state court." *Id.* at 597, 102 S.Ct. at 1307; *Graham*, 728 F.2d at 1540.

---

4. In his Response to Respondents' Return, petitioner raises new issues beyond those contained in his petition. Specifically, he contends that the state courts misinterpreted the application of various state laws; that Minn.Stat. § 609.3461 and DOC Policy 3–231.3 violate his equal protection rights; and that DOC Policy 3–231.3 violates the *Ex Post Facto* Clause. Petitioner did not make a motion to amend to add these claims pursuant to Fed.R.Civ.P. 15. *See* 28 U.S.C. § 2242. These new claims therefore are not properly before the court. The undersigned will only address the claims that were initially set forth in Kruger's habeas petition.

## C. Petitioner's Due Process Claim.

■ The Supreme Court has concluded that taking a blood sample for purposes of criminal investigation, when done properly, does not offend the Due Process Clause. In *Breithaupt v. Abram*, 352 U.S. 432, 433, 77 S.Ct. 408, 409, 1 L.Ed.2d 448 (1957), a state patrolman investigating a collision instructed a physician to take a blood sample from petitioner while he was unconscious. The Court found that "there is nothing 'brutal' or 'offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician." *Id.* at 435, 77 S.Ct. at 410. "[D]ue process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by the whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct." *Id.* at 436, 77 S.Ct. at 410. The Court noted that blood tests have become routine in our everyday life. *Id.* at 436, 77 S.Ct. at 410–11. The Court held that "a blood test taken by a skilled technician is not such 'conduct that shocks the conscience' ... nor such a method of obtaining evidence that it offends a 'sense of justice.'" *Id.* at 437, 77 S.Ct. at 411; *Schmerber v. California*, 384 U.S. 757, 760, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). *But c.f. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (concluding that forcibly pumping a suspect's stomach "shocks the conscience" and "offends a sense of justice" thereby violating the Due Process Clause).

Here, prison officials took blood from petitioner for DNA analysis pursuant to Minn. Stat. § 609.3461. Respondents submitted evidence which shows that the procedures employed by the MCF–STW health services unit are performed according to medically acceptable protocols developed by the Bureau of Criminal Apprehension ("BCA"). *See* Bailey Aff., Ex. D. at 29–30. Technicians used BCA equipment to take blood samples. *Id.* On November 7, 1990, trained laboratory technician Rafael Lopez drew blood from Kruger. *Id.* The court concludes that Kruger's blood sample was taken by a proper method as required under *Breithaupt* and *Schmerber*. The procedure employed does not "shock the conscience," nor "offends the sense of justice." Petitioner has failed to state a due process claim for habeas relief.

## D. Petitioner's Eighth Amendment Claim.

■ Confinement in prison is "a form of punishment subject to scrutiny under the Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978). The Eighth Amendment[5] prohibits the infliction of cruel and unusual punishment, *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408–09, 51 L.Ed.2d 711 (1977), and prohibits deprivations which are not part of an inmate's sentence, *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Along with prohibiting barbarous physical punishment, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" that are totally without penological justification. *Hudson v. McMillian*, 503 U.S. 1, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (*quoting Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)); *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

■ Although there is no static "test" for courts to determine whether the conditions of confinement are cruel and unusual, the application of the Eighth Amendment must come from "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399 (*citing Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Not every hardship encountered in the prison environment, however, will constitute cruel and unusual punishment. *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399; *see e.g. Cody v. Hillard*, 830 F.2d 912, 916 (8th Cir. 1987) (double celling not cruel and unusual punishment); *cert. denied*, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.1985) (allegation that prison guard

---

**5.** The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

caused minor injury to inmate and spoke to him in "belligerent tone" not cruel and unusual punishment).

In *Boreland v. Vaughn,* No. CIV.A.92–0172, 1993 WL 62707 (E.D.Pa.1993), *aff'd,* 22 F.3d 300 (3d Cir.1994), an inmate brought suit alleging that his First and Eighth Amendment rights were violated when officials forced him to submit to a blood test. The court observed that to violate the Eighth Amendment requires "more egregious conduct than that adequate to support a common law tort." *Id.* at *5 (*quoting Williams v. Mussomelli,* 722 F.2d 1130, 1134 (3d Cir. 1983)). Plaintiff claimed that "the needle caused severe pain, dizziness, weakness throughout his body, painful swelling in his left hand, and left a scar." *Boreland,* 1993 WL at *6. The court concluded that "[t]he use of a needle is hardly the cruel and unusual punishment contemplated by the Eighth Amendment." *Id.*

■ Here, a trained technician withdrew petitioner's blood in accordance with the medically acceptable BCA procedures. *See* Bailey Aff., Ex. D. at 29–30. Taking blood in this manner did not amount to "the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Moreover, petitioner's blood was taken for the legitimate interest of constructing a DNA database of criminal sexual offenders pursuant to Minn. Stat. § 299C.155 (1991). Respondents did not violate petitioner's Eighth Amendment rights.

### E. *Petitioner's Fourth Amendment Claim.*

■ "Individuals have a reasonable expectation of privacy in the personal information their body fluids contain." *Glover v. Eastern Neb. Com. Office of Retardation,* 686 F.Supp. 243, 250 (D.Neb.1988), *aff'd,* 867 F.2d 461 (8th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989).

"Compulsory administration of blood tests" involves a "search and seizure" and implicates the Fourth Amendment. *Schmerber,* 384 U.S. at 767, 86 S.Ct. at 1834.

■ The Constitution only protects against "intrusions that are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. at 1834. Courts must consider "whether [officials] were justified in requiring petitioner to submit to the test, [and] whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." *Id.* In determining the reasonableness of a search, courts must balance "the need to search against the invasion which the search entails." *McDonell v. Hunter,* 809 F.2d 1302, 1307 (8th Cir.1987) (*quoting Camara v. Municipal Court,* 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)).

■ Lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). A prisoners' Fourth Amendment rights are limited by institutional security needs and the prisoner's reduced expectation of privacy.[6] *Lyon v. Farrier,* 727 F.2d 766 (8th Cir.1984) (per curiam), *cert. denied,* 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 79 (1984).

■ Withdrawal of petitioner's blood here constituted a search and seizure, however, it was reasonable. The court concludes that the officials were "justified in requiring petitioner to submit to the test." The statute authorizing the test serves the legitimate governmental interest of assisting investigation and prosecution of sex crimes. The need to search here outweighs the minimal invasion which occurred. The manner in which officials withdrew petitioner's blood

---

**6.** Petitioner argues that he does not have a diminished expectation of privacy because the intrusion had nothing to do with institutional security, internal functions of the prison, or protection of others. *See* Petitioner's Response to Respondents Return and His Supporting Memorandum, p. 9. The court disagrees. The limited expectation of privacy results from his status as a prisoner regardless of the governmental purpose for the search. Instead, the governmental purpose for the search is relevant when balancing the need for the search against the intrusion. If the purpose is slight and the intrusion great, then a search may be unreasonable despite a prisoner's reduced expectation of privacy.

was reasonable. A trained technician took petitioner's blood according to BCA policy. The court concludes that taking petitioner's blood here did not violate the Fourth Amendment.

### F. *Petitioner's Ex Post Facto Clause Claim.*

 The *Ex Post Facto* Clause of Article I, § 10, prohibits the states from passing any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Munger v. Erickson,* 979 F.2d 1323, 1325 (8th Cir.1992) (*quoting Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). The prohibition ensures that "legislative Acts give fair warning of their effect ... [and] restrain[s] arbitrary and potentially vindictive legislation." *Chauvin v. Erickson,* 998 F.2d 617, 619 (8th Cir.1993), (*quoting Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). To violate the *Ex Post Facto* Clause, a law must impose a "greater punishment than the law in effect on the date of the offense." *Munger,* 979 F.2d at 1325; *See Weaver,* 450 U.S. at 29, 101 S.Ct. at 964.

 The *Ex Post Facto* Clause "applies only to penal statutes" which retroactively disadvantage offenders. *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990); *Coley v. Pung,* No. C9–91–722 (Minn.Ct.App. Oct. 15, 1991) (holding that *ex post facto* analysis did not apply because Minn.Stat. § 609.3461 is not penal in nature); *See State v. Blair,* 474 N.W.2d 630, 638 (Minn.Ct.App.1991) (holding that the *Ex Post Facto* Clause prohibition did not apply to a statute requiring offender to reimburse extradition costs because it did

not make the punishment of the crime more burdensome).

In *Collins,* the legislature enacted a statute which allowed the appellate court to reform improper verdicts. *Collins,* 497 U.S. at 40, 110 S.Ct. at 2718. The Supreme Court found that the statute resulted in a procedural change, rather than a change in substantive law. *Id.* at 44, 110 S.Ct. at 2720. It concluded that the statute did not violate the *Ex Post Facto* Clause because it did not:

> punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime after its commission; nor deprive one charged with crime of any defense available according to the law at the time when the act was committed.

*Id.* at 52, 110 S.Ct. at 2724.

 Here, taking petitioner's blood pursuant to Minn.Stat. § 609.3461 did not violate the *Ex Post Facto* Clause. The Statute is not penal in nature.[7] Its purpose is to create a DNA database for law enforcement purposes. *See* Minn.Stat. §§ 609.3461 (Supp. 1994); 299C.155 (1991); *Coley,* No. C9–91–722 at *2. The court concludes that application of Minn.Stat. § 609.3461 to petitioner is not prohibited by the *Ex Post Facto* Clause. The court therefore recommends that petitioner's application for writ of habeas corpus be denied.

### IV. *RECOMMENDATION.*

Based upon the foregoing and all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

---

7. Petitioner seems to argue that the statute is penal in nature because officials threatened him with a loss of "good time credit," if he did not submit to the blood test. `See Petitioner's Response, 15–19. Disciplinary measures imposed on inmates for failing to obey orders do not make a statute "penal in nature." The court must analyze the statute itself and its purpose. Disciplinary actions independently and subsequently imposed by prison officials, even if they indirectly relate to the statute, do not make the statute "penal in nature." Pursuant to Local Rule 72.1(c)(2), any party may object to this report

and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is being made.

1. Petitioner's application for writ of habeas corpus be **DENIED.**

DATED: Sept. 16, 1994.