Derek A. MABINE, Plaintiff,

v.

Donald T. VAUGHN, et al., Defendant.

Civil Action No. 97–5819.

United States District Court,
E.D. Pennsylvania.

Oct. 27, 1998.

Derek A. Mabine, Pittsburgh, PA, pro se.

Betha Anne Smith, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Plaintiff Derek Mabine, an inmate in the Pennsylvania Department of Corrections, brings this action under 42 U.S.C. § 1983 against three prison officials. Although the plaintiff does not base his claim for relief under any specific portion of the Constitution, the defendants have appropriately interpreted his claim to be an Eighth Amendment action alleging cruel and unusual punishment.[1] The three named defendants are Superintendent Donald T. Vaughn; Henry Jackson, the former Deputy Superintendent for Facilities Management; and Michael Lorenzo, the Deputy Superintendent for Internal Security.[2] The defendants now move for summary judgment.

---

1. The Complaint generally requests a "declaratory judgement that defendant[s] violated the U.S. Constitution and state law by their actions and inactions" as well as compensatory and punitive damages. *See* Compl. §§ 5–6.

2. While plaintiff's Complaint includes Dave Diguglielmo, a former Superintendent at Graterford, in his list of the individuals he is suing, the caption does not include Mr. Diguglielmo. Consequently, the defendants' first response explicitly states that they do not consider him to be a

## Factual Background

The plaintiff arrived at the State Correctional Institution at Graterford ("Graterford") on April 18, 1991. At that time, he was asked to identify any enemies of whom he knew within the Department of Corrections. He responded in writing that he had "no known enemies." Defs.' App. 33; see also id. at 34 (memo from Corrections Counselor noting same). More than six years later, on June 11, 1997, the plaintiff was struck in the head by another inmate named Richard Blocker. Upon being separated from the plaintiff by two corrections officers, Blocker stated repeatedly that he would "get" Mabine for killing Blocker's brother. Both inmates were charged with prison misconduct[3] and escorted to the Internal Security Office. Lieutenant Soler, an internal security officer, interviewed Blocker, who stated that he would definitely kill Mabine if given the opportunity. See Defs.' App. 26; Aff. of Ismael Soler ¶ 4. Mabine's own interview corroborated Blocker's allegation: Mabine had been sentenced to life imprisonment for killing Wayne Hill, who was Richard Blocker's brother. At this time, Mabine informed the interviewing officer, Lieutenant Soler, that another prison official, Captain Caison, had placed a separation between him and Blocker in 1992. See Defs.' App. 26; Aff. of Ismael Soler ¶ 5. Soler stated in his report of the incident that he found no such separation on file, see Defs.' App. 26; Aff. of Ismael Soler ¶ 6, and he emphasized that an active separation needed to be filed because he believed that Blocker would "stop at nothing until he has fulfilled his obligation in killing Derek Mabine." Defs.' App. 26.

The day after the assault, Mabine complained of a headache. According to the affidavity of Judith Ritter, the prison R.N. who subsequently reviewed plaintiff's records, Mabine was diagnosed with a tension headache and prescribed Motrin. See Defs.' App. 67–68. The same affidavit states that the plaintiff sought no further treatment except on July 21, 1997, when he also complained of a headache. However, on this date he stated that he "hit his head on an air conditioner." See id. at 68; see also id. at 71 (physician's report).

On June 14, 1997, Mabine filed an inmate grievance stating that he had been attacked by Blocker after being placed in the general population. See Defs.' App. 19. On June 16, Bessie Williams, the Unit Manager, responded to the grievance, stating that there had indeed been a separation and that he and Blocker had been allowed to be in the same population only because of error. See id. at 20.

Following the resolution of the grievance process, on June 24, a separation form was filled out and placed in each inmate's file, see Defs.' App. 39; on June 30, 1997, the separation was placed in the Department of Corrections' computerized separations system. See id. at 40, 43. However, according to the declaration of Henry Jackson, following Blocker's 60–day disciplinary custody sanction, his counselor, Mr. Zeles, apparently failed to note the separation between Blocker and Mabine and stated that he should be released into the general population. See id. at 80, ¶¶ 5–7. On August 7, 1997, the members of the Program Review Committee (PRC) reviewed Blocker's status. Defendant Jackson was a member of this committee. Based both on Zeles' comment that there were no separations, Blocker's present conduct, and Blocker's representation that he no longer felt hostile toward Mabine, the PRC released Blocker on August 11 into the general housing unit. See id. at 80, ¶ 7.

Mabine discovered that Blocker had been released into the general population and immediately reported it to Bessie Williams, who placed Blocker in administrative custody on August 13. See Defs.' App. 55. During the two day period that Blocker and Mabine were not separated, they never encountered each other. Following notification of the error, Blocker remained in administrative custody until his transfer to Rockview prison.

defendant and that they have therefore not served him. See Defs.' Answer ¶ 2(b).

**3.** The charges against the plaintiff were subsequently dismissed because he was the victim of the incident. See Defs.' App. 36, 35.

The plaintiff argues that the defendants should be held liable under § 1983 because the separation that should have been in place since 1992 was not honored, thus leading to the attack on June 11, 1997. The plaintiff also alleges that be should have been warned that Blocker was in the general population so he could have avoided him or informed the staff of the danger he posed. Mabine states that he now suffers "daily" from the injuries he received and that he requires continual medical care. *See* Compl. § 5 He requests declaratory, injunctive, compensatory and punitive relief.

The defendants move for summary judgment based on plaintiff's failure to state an Eighth Amendment claim, a lack of *respondeat superior* liability under § 1983, and qualified immunity.

*Dicussion*[4]

### *Eighth Amendment Claims*

The defendants argue that neither their failure to protect plaintiff from coming into contact with Richard Blocker nor the actual harm he received rises to the level of a redressable Eighth Amendment Claim.

 The Eighth Amendment does govern the treatment received by prisoners after they have been incarcerated, and prison officials have a duty to protect prisoners from the violence of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not all injuries suffered by a prisoner at the hands of another rise to the level of a constitutional violation:

Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities. . . ."

The second requirement follows from the principal that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference to inmate health or safety[.]"

*Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal citations and punctuation omitted). The Court continued to explain that the "deliberate indifference" standard means that

a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837, 114 S.Ct. 1970. The Supreme Court explicitly rejected an objective test and instead directed that, in such cases, courts assess the prison official's mental attitude. *See id.* at 837–39, 114 S.Ct. 1970. The Third Circuit, in turn, explained that for an

---

4. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence pre-

sented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the movant does not have the burden of proof on the underlying claim or claims, that movant has no obligation to produce evidence negating its opponent's case, but must merely point to the lack of any evidence supporting the non-movant's claim. When the party moving for summary judgment is the party with the burden of proof at trial, and the motion fails to establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992).

Eighth Amendment claim brought under 42 U.S.C. § 1983 to survive a motion for summary judgment following *Farmer,* the prisoner must show "1) a substantial risk of serious harm; 2) the defendants' deliberate indifference to that risk; and 3) causation." *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir.1997) (citations omitted).

■ In this case, the plaintiff's claim simply does not rise to the level of an Eighth Amendment violation as he can demonstrate neither deliberate indifference nor a sufficiently serious injury or risk of harm. While, taking the facts in the light most favorable to the plaintiff, the defendants may have been negligent, such actions do not rise to the level of deliberate indifference, and would not have been actionable even before *Farmer. See Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (holding that district court properly dismissed Due Process failure to protect claim when claim was based on prison officials' negligence).

Initially, the actions of the prison officials prior to the attack do not constitute deliberate indifference. Even assuming that a separation was in existence as of 1992, there is no evidence nor contention by plaintiff that any defendant was aware of that separation before the attack on June 11, 1997. Additionally, as the defendant argues, plaintiff cannot alternatively demonstrate that any defendant was or should have been aware of a need for separation independently of any formal filing: Mabine did not know that Blocker was at Graterford, and the facts giving rise to an awareness of the danger did not become clear until after the June 11, 1997 attack. *See Farmer,* 511 U.S. at 844, 114 S.Ct. 1970, *cf. Hamilton v. Leavy,* 117 F.3d 742 (3d Cir.1997) (reversing summary judgment grant on Eighth Amendment claim when there was uncontroverted evidence that prison officials knew of repeated, serious assaults on inmate yet nonetheless returned him to general population where he suffered yet another serious attack); *Ingalls v. Florio,* 968 F.Supp. 193–94 199 (D.N.J.1997) (denying summary judgment when there were repeated assaults by both guards and other

inmates of which supervisors were demonstrably aware).

■ In addition, the injury suffered by the plaintiff does not rise to the level of an Eighth Amendment violation even if he could prove the mental state required by *Farmer.* The Eighth Amendment protects prisoners from the " 'unnecessary and wanton infliction of pain'," *Barber v. Grow,* 929 F.Supp. 820, 822 (E.D.Pa.1996), *quoting Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (other citations omitted), but actions that may be sufficient to create a common law tort cause of action are not necessarily enough to support a constitutional action. *See id.* at 823 (granting 12(b)(6) motion on Eighth Amendment claim that alleged that a guard intentionally yanked a chair out from under an inmate, causing minor injuries); *Williams v. Mussomelli,* 722 F.2d 1130, 1133 (3d Cir.1983) (stating generally that an Eighth Amendment claim is not equivalent to a common law tort claim). As noted in *Barber,* this district has frequently dismissed claims for "their failure to allege more than minimal injury or the requisite state of mind." *Id.*

The records submitted by defendants and not contested by plaintiff indicate that the plaintiff required no medical attention following the attack on June 11. He was admittedly diagnosed with a tension headache, as noted previously, but the only follow-up treatment was non-prescription Motrin. While the plaintiff alleges in his complaint that he has had continuous pain since the time of the beating, there are no medical records to substantiate any further treatment or effort at further treatment, and Mr. Mabine does not provide any elaboration of his subsequent medical problems. In sum, the plaintiff's injuries are constitutionally de minimis and, independently of any state of mind question, do not rise to the level of an Eighth Amendment violation.

■ Similarly, the actions after the attack do not rise to the level of an Eighth Amendment violation. First, the named officials' actions do not amount to deliberate indifference. Neither Vaughn nor Lorenzo has been shown to have even been aware of the situation, must less to have been aware of a risk

of substantial harm that they deliberately disregarded. The only defendant who is alleged to have played a direct role in this occurrence is defendant Jackson, who served on the PRC. However, there is no indication whatsoever that defendant Jackson was aware of a separation prior to his decision to release Blocker into the general population; indeed, as noted previously, Blocker's counselor Zeles had specifically noted that no separation was in effect. Plaintiff cannot demonstrate that Jackson was aware of both the facts from which an inference could be drawn that the plaintiff was at substantial risk and that Jackson then drew that inference, the burden established by *Farmer*. Second, even if the plaintiff could demonstrate this mental state with respect to post-attack actions, he suffered absolutely no injury as a result of it. The plaintiff does not contend that he met, much less was harmed by, Mr. Blocker after Blocker's inadvertent release into the general population. Moreover, because the plaintiff is no longer incarcerated in the same facility as Blocker, he cannot contend that he is at substantial risk of future harm. In short, the plaintiff cannot demonstrate the subjective component of the *Farmer* test: he has provided no indication that the defendants were aware of a substantial risk and disregarded that risk. *See, e.g., Ingalls v. Florio*, 968 F.Supp. 193, 198 (D.N.J.1997)

### Other Grounds for Summary Judgment

The defendants raise several other bases for summary judgment, each of which would also be sufficient to grant the motion for summary judgment.

 First, defendants contend that Vaughn and Lorenzo cannot be held liable for violating Derek Mabine's Eighth Amendment rights under 42 U.S.C. § 1983 because of their lack of actual responsibility for any harm that came to him. Section 1983 does not permit the finding of liability based on any *respondeat superior* theory; rather, when suing individuals in supervisory capacities, the plaintiff has the burden of demonstrating either the supervisor's personal involvement in the violation or the supervisor's affirmative promulgation of a policy leading to the violation. *See Ingalls v. Florio*, 968 F.Supp. 193, 197 (D.N.J.1997). Defendant here does not allege facts that would in any way demonstrate personal knowledge of the violations or promulgation of any unconstitutional policy on the part of Vaughn and Lorenzo, each of whom is apparently sued only because of their supervisory roles.

 Defendants also argue that summary judgment is warranted because each defendant has qualified immunity. Qualified immunity applies if a reasonable person in the defendant's position could have believed that his or her actions were proper based on existing law and the information actually possessed. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Even if the conduct in question violated the plaintiff's constitutional rights, the official is immune from liability if his or her conduct resulted from a reasonable mistake in judgment. *See id.; see also Hunter v. Bryant*, 502 U.S. 224, 228–29, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). In this case, while the defendants were probably guilty of poor judgment, there is no indication that their actions were objectively unreasonable. As described above, neither Vaughn nor Lorenzo were aware of the need to keep Blocker separated from Mabine, nor is there any evidence indicating that either were involved in the decision to release Blocker into the general population. Jackson was, as described previously, unaware of the formal separation and also apparently believed that Blocker no longer posed a threat to Mabine.

### Injunctive Relief

Plaintiff's claim for injunctive relief requesting that defendants enforce the separation between him and Blocker is moot as Mabine is no longer housed at Graterford. Neither Blocker nor any of the defendants are present at plaintiff's new facility.

For the foregoing reasons, the defendants' motion for summary judgment will be granted.