BLD-098                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-2986 and 12-3187
_____

LEROY JACKSON,
Appellant

v.

CITY OF PHILADELPHIA; PRISON HEALTH SERVICE, INC.;
JOHN DOE, RESPONSE TEAM MEMBERS;
NURSE BARBRA MCKENNEDY, RPPNS; C.O. LITS
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-00457)
District Judge:  Honorable Legrome D. Davis
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
(Nos. 12-2986 & 3187)
and for Possible Dismissal for Lack of Jurisdiction (No. 12-2986)
January 25, 2013
Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: January 31, 2013)

_____

OPINION
_____

PER CURIAM

Leroy Jackson, an inmate proceeding pro se, appeals from the District Court's grant of summary judgment in favor of the defendants. For the reasons set forth below, we will summarily affirm.

I.

The facts being well-known to the parties, we set forth only those that are pertinent to this appeal. On December 25, 2009, Jackson claimed that he suffered injuries at the hands of a "response team" while he was a pretrial detainee at the Curran-Fromhold Correctional Facility in Philadelphia, Pennsylvania. (Dkt. No. 36, p. 1.) According to Jackson, the members of the response team kicked and hit him, resulting in injuries to his neck, back, and shoulder. When Jackson asked defendant C.O. Lits if he could "go to medical," Lits refused. (Id. p. 2.) That day and the next Jackson submitted a "sick call slip" on a plain piece of paper, requesting medical attention. (Id.) He did not state that he was in severe pain or required emergency care.

Jackson saw defendant Barbara McKennedy, a registered nurse, on December 30, 2009. In accordance with prison policy, she saw him on the first day that he appeared on her patient list. Her examination of Jackson revealed that he was not in severe pain and there was nothing significantly wrong with his neck, back, or shoulder. She recommended that he rest, refrain from heavy lifting, and apply warm compresses as needed until he could see a physician's assistant.

2

On January 6, 2010, Jackson submitted a grievance stating that he was still in pain and had not seen a physician's assistant despite McKennedy's referral. He then saw defendant Karen McKinney, a physician's assistant, on January 8, 2010, the first day that he appeared on her patient list. McKinney determined that Jackson was only experiencing mild discomfort and prescribed him a ten-day regimen of pain medication. She also taught him some stretching exercises to help relieve his discomfort. A week later, Jackson complained that he had not been given the prescribed pain medication. He received it later that day. (Id.)

On March 16, 2010, Jackson had a routine "chronic care" visit with his physician to monitor his diabetes. (Id. p. 3.) He did not complain of any neck, back, or shoulder pain at that time. However, when he saw McKinney again on March 29, 2010, he complained that he had pain in his right shoulder when he lifted his arm above his head. She prescribed him pain medication on an as-needed basis because Jackson said that it helped him in the past. From April 2010 to July 2010, Jackson had five chronic care visits, and at none of them did he complain of shoulder pain.

However, at a chronic care visit on September 15, 2010, Jackson complained of pain and decreased range of motion in his right shoulder. X-rays taken at the time showed minor degenerative disease in his shoulder cap. After a few more chronic care visits, Jackson saw an orthopedist on November 19, 2010. (Id.) He was diagnosed with "frozen shoulder," which was characterized by "severely limited range of motion" in his

right shoulder. (Dkt. No. 75-7, p. 25.) His treatment options were either physical therapy or manipulation while under anesthesia. Jackson chose the latter.

The procedure, a non-invasive surgical repair, was performed on December 6, 2010. Jackson's doctor told PHS that Jackson would need pain medication for a couple of weeks after the procedure and should attend physical therapy. His discharge instructions contained the same information. Jackson was approved to attend physical therapy the day after the procedure. However, Jackson claimed that he did not receive physical therapy or pain medication, and that instead he was placed "in a 3 man cell for 9 months." (Dkt. No. 36, p. 7.)

On April 23, 2011, Jackson filed an amended complaint pursuant to 42 U.S.C. § 1983, seeking monetary damages for his right shoulder pain from the City of Philadelphia ("the City"), Prison Health Services, McKennedy, McKinney (collectively, "the PHS Defendants"), C.O. Lits, and the response team members.[1] He alleged that the City overcrowded its prison cells and failed to train and properly supervise the response team in the use of physical force, and that the response team used excessive force against him. (Dkt. No. 36, p. 4.) He also alleged that C.O. Lits violated his constitutional rights by denying him access to medical treatment. (Id.) Finally, he alleged that the PHS Defendants violated his constitutional rights by failing to provide him with adequate medical treatment. (Id. pp. 5-6.)

---

[1] The lawsuit was initiated in March 2010, when the District Court first entered Jackson's complaint after granting him leave to proceed in forma pauperis. (Dkt. No. 3.)

On June 13, 2012, the District Court granted summary judgment in favor of the PHS Defendants, held the City's motion for summary judgment in abeyance pending the production of discovery[2], and denied Jackson's motion for reconsideration of the denial of his motion for leave to amend his complaint. (Dkt. No. 94, p. 22.) The City's motion for summary judgment was granted by order entered July 20, 2012. (Dkt. No. 101.) Jackson timely appealed. (Dkt. Nos. 97, 102.)

II.

Jurisdiction is proper under 28 U.S.C. § 1291.[3] We exercise plenary review over a grant of summary judgment and "employ the same standard as applied below." DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). That is, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When

---

[2] In support of his appeal, Jackson argues that the City never produced the requested discovery. The record, however, belies this assertion. (Dkt. Nos. 75, 94, 99, and 101.)

[3] Jackson filed a notice of appeal from the District Court's June 13, 2012 order granting summary judgment in favor of the PHS Defendants (C.A. No. 12-2986). That, however, was not an immediately appealable decision under 28 U.S.C. § 1291 because it was not "final as to all claims and as to all parties." Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 640 (3d Cir. 1991). Specifically, at that time, the claims against the City remained in the case, as the District Court held its summary judgment motion in abeyance. Because Jackson appealed from an order that was not immediately appealable, C.A. No. 12-2986 will be dismissed for lack of jurisdiction. The District Court's order entered July 20, 2012, adjudicated all remaining claims against the remaining parties, and Jackson timely appealed from that order. We address the grant of summary judgment to the PHS Defendants in this opinion.

reviewing a grant of summary judgment, we must affirm "if the record evidence submitted by the non-movant is merely colorable or is not significantly probative." DeHart, 390 F.3d at 267-68 (citation and internal quotation marks omitted). We may summarily affirm the District Court's judgment if the appeal presents no substantial question. See 3d Cir. LAR 27.4 and I.O.P. 10.6.

### A. PHS Defendants' Motion for Summary Judgment

The District Court granted summary judgment in favor of the PHS Defendants on all of Jackson's claims. (Dkt. No. 94.) Turning first to the issue of exhaustion, the District Court determined that Jackson's claim that he did not receive physical therapy after his shoulder surgery in December 2010 was unexhausted, and therefore procedurally defaulted. (Id. p. 16.) A prisoner must exhaust his administrative remedies before bringing suit in federal court. 42 U.S.C. § 1997e(a); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). If he fails to do so, the prisoner's claim is procedurally defaulted. Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). The District Court properly concluded that Jackson's claim, which stemmed from an alleged lack of treatment in December 2010, was unexhausted, as it arose after he initiated his lawsuit in March 2010.[4] (Dkt. No. 3.)

The District Court then turned to Jackson's claims of inadequate medical treatment, concluding that they failed as a matter of law. (Dkt. No. 94, pp. 17-21.) As a pretrial detainee, Jackson was technically protected by the Fifth and Fourteenth

---

[4] We note that Jackson did not take any steps to exhaust his administrative remedies prior to filing his amended complaint in April 2011.

Amendments, not the Cruel and Unusual Punishment Clause of the Eighth Amendment. Williams v. Mussomelli, 722 F.2d 1130, 1133 (3d Cir. 1983). However, in this case, that is a distinction without a difference, as the Fourteenth Amendment provides at least as much protection as the Eighth Amendment. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). Thus, to prove that his constitutional right to adequate medical treatment was violated, Jackson had to show (1) a serious medical need and (2) acts or omissions by prison officials demonstrating their deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). In cases alleging delayed medical treatment, such as this one, deliberate indifference is shown when a prison official intentionally denies or delays access to medical care or intentionally interferes with treatment after it is prescribed. Id. at 104-05.

We agree with the District Court that the facts, when taken in the light most favorable to Jackson as the non-movant, cannot sustain a colorable claim of deliberate indifference by McKinney and McKennedy. Assuming, as did the District Court, that Jackson demonstrated a serious medical need due to his shoulder injury, (Dkt. No. 94, p. 18), the record reflects that McKinney and McKennedy provided Jackson with medical treatment at his every request, culminating with the non-invasive surgical treatment of his shoulder. Although Jackson may not have received treatment as quickly as he would have liked, nothing in the record supports that any delay in his treatment was intentional,

7

and therefore it does not rise to the level of deliberate indifference that is required to establish a constitutional violation.[5]

The District Court next considered whether PHS could be held responsible under § 1983 for having a "policy or custom" that inflicted injury. Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694-95 (1978). We agree with the District Court that nothing in the record supported Jackson's claim that PHS had an official policy or custom that caused or contributed to his injuries. We will summarily affirm the grant of summary judgment to the PHS Defendants.

**B.      The City's Motion for Summary Judgment**

The District Court also granted summary judgment in favor of the City on all of Jackson's claims. (Dkt. No. 101.) Turning again to the issue of exhaustion, the District Court determined that Jackson had failed to exhaust his administrative remedies with respect to his "non-medical claims," that is, the claim of excessive force by the response team, the claims against the City for failure to properly train the response team and overcrowding, and the claim against C.O. Lits for denying his request for medical treatment. We agree with the District Court that Jackson did not timely appeal his grievances giving rise to these claims. (Id. pp. 4-5.) According to prison policy, he was required to appeal any adverse decision within five days, and it is undisputed that he

---

[5] We also agree with the District Court that Jackson's claim that his frozen shoulder was caused by a delay in his treatment was unsupported by any evidence in the record. (Dkt. No. 94, p. 20.)

failed to do so. (Id. p. 5.) Therefore, Jackson's non-medical claims were unexhausted and procedurally defaulted.[6]

The District Court then considered Jackson's claim that C.O. Lits violated his constitutional rights by denying him medical treatment for three days, thereby resulting in his frozen shoulder. (Dkt. No. 101, p. 8.) We agree that the record does not demonstrate any causation between the minimal delay in treatment and Jackson's frozen shoulder. As previously discussed, Jackson's medical treatment passed constitutional muster at all times related to his lawsuit. There being no substantial question presented, we will summarily affirm the District Court's grant of summary judgment to the City.

## C. Jackson's Motion for Reconsideration

Jackson sought leave to amend his complaint one month after the close of discovery and a few days before the deadline for dispositive motions.[7] (Dkt. No. 71.) Noting that Jackson was given several extensions of time and that allowing him to amend his complaint so late in the case would be manifestly unfair to all of the defendants, the

---

[6] The District Court then went on to address Jackson's claims on the merits, assuming that he had exhausted his administrative remedies. Because we will summarily affirm the grant of summary judgment on the basis that the claims were unexhausted, and therefore procedurally defaulted, we need not address those alternative grounds.

[7] Jackson filed his motion under Federal Rule of Civil Procedure 15(c), which permits a properly amended pleading to "relate back" to the original pleading in certain circumstances. See Fed. R. Civ. P. 15(c). However, the District Court properly construed it as filed under Federal Rule of Civil Procedure 15(a), because that is the appropriate vehicle for seeking leave to amend in the first instance. See Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196 (3d Cir. 1994).

District Court denied the motion. (Dkt. No. 73.) The District Court also denied Jackson's subsequent motion for reconsideration. (Dkt. No. 89, 94.)

We review the denial of a motion for reconsideration for abuse of discretion. Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010). A motion for reconsideration is a limited vehicle used "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). A judgment may be altered or amended if the party seeking reconsideration shows one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. Id.

The District Court did not abuse its discretion in denying Jackson's motion for reconsideration. Putting aside the untimeliness of the motion (see Dkt. No. 94, p. 8), Jackson did not argue any of the limited grounds for reconsideration. As the District Court pointed out, Jackson's motion was denied because his delay in moving to amend was "both undue and prejudicial" to all of the defendants. (Id. p. 9.) Further, Jackson did not demonstrate the requisite "good cause" for the amendment, as it was requested after the deadline for amending pleadings and after the close of discovery. See Fed. R. Civ. P. 16(b)(4). The District Court properly concluded that Jackson did not suffer a "manifest injustice" as a result of the denial of his motion for leave to amend. Max's Seafood, 176 F.3d at 677. Indeed, the record reflects that the District Court granted Jackson significant leeway in prosecuting his case, which was pending for nearly two

10

years and in which he was granted many extensions of time. We will therefore summarily affirm the denial of Jackson's motion for reconsideration.

## III.

There being no substantial question presented on appeal, we will summarily affirm the July 20, 2012 judgment of the District Court. 3d Cir. LAR 27.4 and I.O.P. 10.6. Jackson's motion for appointment of counsel is denied. The appeal in C.A. No. 12-2986 will be dismissed for lack of jurisdiction and the pending motions in that case are denied.