Marcus HUNTER, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVA-
NIA, DEPARTMENT OF COR-
RECTIONS, Defendant.

No. CIV. A. 98–0358.

United States District Court,
E.D. Pennsylvania.

April 7, 1999.

Vaughnn A. Booker, Lansdale, PA, for Plaintiff.

Randall J. Henzes, Deputy Atty. General, Office of Atty. General, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

The plaintiff, Marcus Hunter ("Hunter") brings this employment discrimination action against the defendant, the Department of Corrections for the Commonwealth of Pennsylvania ("DOC"), asserting claims under Article I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Heart and Lung Act, 53 Pa. Cons.Stat.Ann. § 637 *et seq.*, and the Workers Compensation Act, 77 Pa. Cons.Stat.Ann. § 1 *et seq.*; and an intentional infliction of emotional distress claim. Before the Court is the DOC's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Hunter's response thereto. For the following reasons, the motion will be denied as to the federal claim and the state claims shall be dismissed without prejudice.

## BACKGROUND

The DOC hired Hunter in September 1989 to be a Corrections Officer at the State Correctional Institute at Graterford ("SCI–Graterford"). On February 11, 1993 Hunter injured his back at work while opening a cell door in the old section of SCI–Graterford. He left work and received workers compensation benefits. He returned to work in May or June 1993 on a light duty basis. This light duty assignment lasted until November 1993 when Hunter's superior, Captain Thomas J. Dohman, repeatedly placed Hunter in SCI–Graterford's old section. (Hunter's May 15, 1998 Dep. at 59–61). On December 5, 1993 Hunter left work because his back was hurting. (Hunter's May 15, 1998 Dep. at 15–16). He again received workers compensation benefits.

In January or February 1994 an MRI scan revealed that Hunter had a small disc herniation central and slightly to the left at L4–L5. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. D at 3). On April 7, 1994, however, Dr. Barbara Ann Shelton examined Hunter and found him to be capable of returning to work at full duty. (Dr. Barbara Ann Shelton's Dep. at 23). She, nevertheless, did place a fifty pound lifting restriction on him. (Dr. Barbara Ann Shelton's Dep. at 37).

Hunter did not return to work and continued to receive workers compensation benefits. On May 13 and September 23, 1994 Dr. Donald Griffin submitted to SCI–Graterford medical forms in which he opined that Hunter would be totally disabled for an unknown period of time. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–9, Uhl–10). In November 1994 Dr. Morley sent a similar form to SCI–Graterford. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–8).

544

On January 17, 1995 the DOC petitioned to terminate Hunter's workers compensation benefits on the basis of Dr. Barbara Ann Shelton's report. (DOC's Mot. Summ. J. Ex. 5 at 3). The DOC conducted a hearing on May 24, 1995 to determine Hunter's continued eligibility for Heart and Lung Act benefits. (DOC's Mot. Summ. J. Ex. 5 at 2). On November 6, 1995 Workers' Compensation Judge Joseph Hakun found that Hunter failed to present evidence in opposition to the DOC's petition. (DOC's Mot. Summ. J. Ex. 5 at 5). Hearing Examiner James J. Kirchner agreed with the judge. (DOC's Mot. Summ. J. Ex. 5 at 5). On March 26, 1996 the DOC terminated Hunter's workers compensation benefits. Hunter blamed his counsel, Robert H. Bembry, III, for not presenting evidence to oppose the DOC's petition.

On April 24, 1996 SCI–Graterford Superintendent, Donald T. Vaughn, sent Hunter a letter to notify him that he would be terminated unless he was able to return to work at full duty by May 2, 1996. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–1). To return to work at full duty, Hunter would be required to obtain complete medical clearance. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–1). Hunter also was advised to contact the State Employees' Retirement System before May 2, 1996 "to protect [his] rights under the Commonwealth's Retirement Act[,]" and to direct questions to Ann Uhl, a personnel analyst II in the SCI–Graterford personnel department. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–1).

Hunter contacted Ann Uhl and told her that he could not return to work at full duty. She advised him to apply for disability retirement benefits. (Ann Uhl's May 29, 1998 Dep. at 21). Hunter applied. Ann Uhl instructed Hunter to request leave without pay while his application was being considered. (Ann Uhl's May 29, 1998 Dep. at 22–23). On June 4, 1996 he formally requested leave without pay. Medical reports describing Hunter's inability to perform his work duties were submitted to the State Employees' Retirement System.

Ann Uhl also explained to Hunter that if his application was accepted he would have to resign to receive the disability retirement benefits. (Ann Uhl's May 29, 1998 Dep. at 22–23). When his application was accepted, Hunter resigned on October 24, 1996 with the reservation that he was "still able to perform the essential functions of [his] current position with modifications." (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–4). On March 20, 1997, medical personnel evaluated Hunter and determined him much improved and able to return to work. (Hunter's Resp. Opp'n Mot. Summ. J. Ex. D at 7). On January 22, 1998 Hunter filed this action. Before the court is the DOC's Motion for Summary Judgment.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir.1989) (citing Anderson, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most

favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. The Americans With Disabilities Act

■ Hunter has alleged that the DOC's failure to accommodate his back injury violated the ADA. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of unlawful discrimination for failure to accommodate under the ADA, the plaintiff must show that: 1) he has a disability within the meaning of the ADA; 2) he is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job; 3) he has suffered an adverse employment decision as a result of discrimination. *See Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3d Cir.1998); *Taylor v. Phoenixville School District,* 998 F.Supp. 561, 565 (E.D.Pa.1998). The DOC moves for summary judgment claiming Hunter has failed to establish a *prima facie* case of unlawful discrimination.[1]

## A. "Disability" Within the Meaning of the ADA

To satisfy the first element of the *prima facie* case, the plaintiff must demonstrate that he is "disabled." *See Deane v. Pocono Medical Ctr.,* 142 F.3d 138, 143 (3d Cir.1998). To establish a "disability" under the ADA, the plaintiff must show: 1) he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual", 2) he has "a record of such impairment", or 3) he is "regarded as having such an impairment." 42 U.S.C. § 12102(2). Since the DOC does not dispute Hunter's claim that he can satisfy the third prong,[2] the DOC cannot show that an absence of a genuine issue of material fact exists here.

## B. Otherwise Qualified Individual

The second element of the *prima facie* case requires the plaintiff to show that he is a "qualified individual." *See Deane,* 142 F.3d at 145. The ADA defines this term as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This inquiry is divided into two prongs. *See Deane,* 142 F.3d at 145; 29 C.F.R. pt. 1630, app. § 1630.2(m). The court must decide: 1) "whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires[;]" and 2) "whether the individual,

1. In the alternative, the DOC wants the court to bar any claim based on Captain Thomas J. Dohman's actions in 1993 because Hunter filed his claim with the Equal Employment Opportunity Commission ("EEOC") outside of the three hundred day requirement of 42 U.S.C. § 2000e–5(e). The court declines to do so because facts indicate that the continuing violation theory is applicable here. Under this theory, the statute of limitations is tolled for acts that occur outside of it if they are part of an ongoing practice or pattern of discrimination. *See West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995).

2. The DOC merely states that Hunter's argument under the third prong shows he cannot satisfy the first prong and Hunter's physicians' reports are to blame for the DOC's misperception. (DOC's Reply Hunter's Resp. Opp'n Mot. Summ. J. at unnumbered pages 1–2).

with or without reasonable accommodation, can perform the essential functions of the position held or sought." *Deane*, 142 F.3d at 145 (citing 29 C.F.R. pt. 1630, app. § 1630.2(m)). Because the DOC does not dispute Hunter's general qualifications as a corrections officer, the court will start its analysis with the second step.

The DOC argues that Hunter failed to satisfy this second step in two ways.[3] First, the DOC contends that Hunter failed to perform certain essential functions of his job. Second, the DOC asserts that Hunter's requested accommodation was unreasonable.

### 1. Essential Functions of Job

■ The DOC argues that Hunter cannot perform the essential functions of his job with or without an accommodation. First, the DOC contends that lifting at least fifty pounds is an essential function of Hunter's job and that Hunter's lifting restriction prevents him from performing this essential function. Second, the DOC asserts that Hunter failed to perform the essential function of job attendance because he did not return to work after Dr. Barbara A. Shelton cleared him to return in April 1994.

The DOC simply does not meet its burden of establishing the absence of a genuine issue of material fact here. A genuine issue of material fact exists as to whether lifting at least fifty pounds is an essential job function because Hunter introduced evidence that the generic essential job functions of his job does not include a requirement of lifting at least fifty pounds. *See* (Hunter's Resp. Opp'n Mot. Summ. J. Ex. Uhl–2).

■ As for the DOC's second contention, although attendance may be an essential function of Hunter's job, *see Eible v.*

*Houston,* No. CIV.A. 96–4655, 1998 WL 303692 at *3 (E.D.Pa. April 21, 1998) (noting that attendance is an essential function of almost any job), Hunter's failure to return to work in April 1994 does not show that he failed to perform the function of job attendance. Because the DOC continued to provide Hunter with workers compensation benefits until April 1996, there is a genuine issue of material fact as to when Hunter was able to return to work. Therefore, the DOC cannot carry its burden.

### 2. Reasonableness of Accommodation Request

■ The DOC argues that Hunter's accommodation request was unreasonable because of 1) Hunter's inability to perform the essential functions of his job and 2) the terms of a collective bargaining agreement. However, as mentioned earlier, Hunter's inability to perform the essential functions of his job is a genuine issue of material fact at least in regard to determining the essential functions of his job. Moreover, the DOC failed to cite to any provision of a purported collective bargaining agreement to support the contention that the agreement would make Hunter's request unreasonable. Therefore, the DOC again failed to satisfy its burden.

### C. Adverse Employment Action

■ The third and last element of the *prima facie* case requires the plaintiff to show he suffered an adverse employment action. *See Deane*, 142 F.3d at 149. The U.S. Court of Appeals for the Third Circuit in *Deane* found that a phone call terminating the plaintiff because of her handicap was uncontroverted direct evidence that she suffered an adverse employment action. *See Id.* Similarly, the DOC's let-

---

**3.** The DOC also asks the court to apply the judicial estoppel doctrine of *McNemar v. The Disney Store, Inc.,* 91 F.3d 610 (3d Cir.1996), to prevent Hunter from claiming he was a qualified individual with a disability in these proceedings since Hunter represented to the State Employees' Retirement System that he was totally disabled. The court declines to do so because the facts surrounding Hunter's claims to the State Employees' Retirement System do not show the requisite intent to play "fast and loose" with the court. *See Id.*

ter threatening to terminate Hunter, the subsequent actions of Ann Uhl to assist Hunter's application for disability retirement benefits and Hunter's resignation letter expressing his reservations about retirement show that Hunter may have suffered an adverse employment action. Therefore, the DOC failed to demonstrate the absence of a genuine issue of material fact here.

## II. Pendent State Law Claims

■ The DOC also argues that the court lacks subject matter jurisdiction over Hunter's state claims because of the *Rooker–Feldman* doctrine and the 11th Amendment. Since Hunter did not respond to this portion of the DOC's motion, the court can only assume, after reviewing the complaint, that Hunter is seeking to relitigate the termination of his benefits under Pennsylvania's Workers' Compensation Act and Heart and Lung Act. That being so, the *Rooker–Feldman* doctrine prevents the court from hearing the state statutory claims. *See Whiteford v. Reed,* 155 F.3d 671, 673–74 (3d Cir.1998) (stating that lower federal courts may not sit in direct review of the decisions of a state tribunal).

■ Additionally, the 11th Amendment bars the court from considering these state statutory claims and also the *intentional infliction of emotional distress* claim. The 11th Amendment immunizes states and their agencies from a private citizen's suit in federal court. *See Wilson v. Vaughn,* No. CIV.A. 93–CV–6020, 1996 WL 426538 at *1 (E.D.Pa. July 30, 1996). Since Pennsylvania has not waived this immunity, *see* 42 Pa. Cons.Stat.Ann. § 8521(b) (1998), Hunter's state claims are barred and will be dismissed without prejudice.