**Derrick BEY, Plaintiff,**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. Civ.A. 984212.**

United States District Court, E.D. Pennsylvania.

May 31, 2000.

Garrett D. Page, Richard W. Rogers & Assoc., Norristown, PA, for Plaintiff.

Kristen Kirk Mayock, Dalinda E. Carrero, Office of Atty. General, Philadelphia, PA, for Defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Derrick Bey, a prisoner currently incarcerated at the State Correctional Institution at Greene ("Greene") and formerly incarcerated at the State Correctional Institution at Graterford ("Graterford"), filed a counseled civil rights action pursuant to 42 U.S.C. § 1983 against various defendants. The named defendants include the Pennsylvania Department of Corrections ("DOC"),[1] the Program Review Committee at Greene ("Greene PRC"), the Program Review Committee at Graterford ("Graterford PRC"),[2] DOC Secretary Martin Horn, Graterford Superintendent Donald Vaughn, Greene's former Superintendent Benjamin Varner, and the following Graterford officers: Captain Dennis Brumfield, Captain Gerald Matalavage, Sergeant Johnny L. Thomas, Corrections Officer Carlisle Martin, and Corrections Officer William Newton (collectively "defendants").[3] In his complaint, plaintiff alleges that defendants violated his First Amendment right "to freedom and speech and assembly," his Sixth Amendment right to assistance of counsel, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to due process of law.

Presently before the court is defendants' motion for summary judgment to which plaintiff has responded. For the foregoing reasons, the court will grant the motion except as to plaintiff's Eighth Amendment claims asserting excessive force against defendants Thomas, Martin, and Newton in their individual capacities.

### I. FACTS

The following material facts are either uncontested or when at odds, the court has accepted plaintiff's version drawing all reasonable inferences in plaintiff's favor.[4]

---

1. Although the DOC is named as a defendant in this action, neither of the two counts contained in plaintiff's complaint are directed towards the DOC. See Compl., Counts 1–2 (captions).

2. The PRC is a three-member panel that "conducts Administrative Custody hearings, thirty (30) day reviews, makes decisions about continued confinement in the RHU/SMU, and hears all appeals of misconducts." See DC–ADM 802(IV)(G).

3. Plaintiff has sued the individual defendants, with the exception of defendant Varner, in both their individual and official capacities. From a review of the complaint, plaintiff is suing defendant Varner only in his individual capacity. See Compl., Counts I–II.

4. Because plaintiff is represented by counsel, this court has no obligation under the teachings of Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), to construe plaintiff's pleadings liberally. That plaintiff is represented by counsel in this case, as opposed to being pro se, has not been helpful to the court. In this connection, the court notes that contrary to the Federal Rules of Civil Procedure governing motions for summary judgment, plaintiff, in a rather disjointed and at times nearly incomprehensible response, often cites to the allegations of the complaint as support for his version of the facts. See Fed.R.Civ.P. 56(c). Indeed, it appears that, for a large portion of his response, plaintiff treats defendants' motion for summary judgment as a motion to dismiss the complaint. Thus, to the extent facts of record, including plaintiff's own deposition testimony, are in conflict with plaintiff's bare allegations in both the complaint and in his response to the summary judgment motion, the facts of record will be accepted. Counsel's less-than-thorough treatment of both the law and the facts shifted from counsel to the court the laborious task of combing through his sixty-eight page response and thirty-eight exhibits, which are approximately two inches thick, in search of evidence to support plaintiff's claims.

Plaintiff was convicted of six counts of burglary, one count of attempted burglary, and one count of criminal trespass in the Court of Common Pleas of Philadelphia County, Pennsylvania. The court imposed a sentence of six to twenty-six years imprisonment, with a minimum sentence date of October 5, 1996 and a maximum sentence date of October 5, 2016.

On October 15, 1996, while incarcerated at Graterford, defendant Thomas issued Misconduct No. 901639 ("Misconduct One")[5] to plaintiff after plaintiff refused to obey an order, used the phone without authorization, and was present in an unauthorized area. *See* Defs.' Mot. for Summ.J. [hereinafter Defs.' Mot.], Ex. D–2. After a hearing, the hearing examiner found plaintiff violated all three rules and sanctioned him to thirty days of cell restriction.[6]

On October 31, 1996, plaintiff contends that he engaged in a verbal argument with defendant Thomas.[7] Plaintiff asserts that as he began to walk away from defendant Thomas and back to his cell, defendant Thomas cursed at him and, without provocation, hit him several times in his upper body and face, knocking plaintiff to the ground.[8] A fistfight between plaintiff and defendant Thomas ensued. During the scuffle, plaintiff knocked down, sat on top of, and threw punches at defendant Thomas.[9] Several other corrections officers, including defendants Brumfield, Martin, and Newton, who were at or near the scene of the fight, came to defendant Thomas' aid. According to plaintiff, the other corrections officers defendants pulled him from defendant Thomas, "slammed" him face first against a nearby concrete wall, struck him several times in his back and neck, handcuffed, and removed him from the area.[10] A large number of prisoners were present on the cell block both during the fight between plaintiff and defendant Thomas and when the other officers came to defendant Thomas' aid.

After the incident, plaintiff was treated for approximately seven scratches and abrasions on his upper body and given a cervical collar for his neck.[11] In turn, defendant Thomas was treated for a swollen right eye, a right cheek bone injury, a cut lip, an injured left shoulder, and abrasions on his forehead, and as a result, missed three days of work. In his capacity as Shift Commander for Graterford on October 31, 1996, defendant Brumfield investigated the incident, reviewed various incident reports,[12] and thereafter submit-

5. It is not to be inferred from the court's labeling of this misconduct as "Misconduct One" that this is the first misconduct plaintiff has received during his incarceration. Rather, during his deposition, plaintiff agreed that he may have received upwards of eighteen misconducts since he entered the prison system.

6. On appeal, the Graterford PRC sustained the hearing examiner's decision.

7. After being informed by Graterford Corrections Officer James Opalka that defendant Thomas was "out to get" him, plaintiff approached defendant Thomas to discuss the prior misconduct. The court notes that defendants' version of the subsequent altercation between defendant Thomas and plaintiff and the ensuing restraint of plaintiff varies dramatically from plaintiff's version.

8. A fellow inmate, Eric Robinson, testified during his deposition that he saw defendant Thomas throw the first punch and also testified that he heard defendant Newton inform defendant Brumfield that defendant Thomas had hit plaintiff first. However, Robinson later testified that when he saw the first blow, he did not see defendant Newton on the scene. *See* Dep. of E. Robinson at 57.

9. Plaintiff characterizes his actions in punching defendant Thomas as "self-defense."

10. Plaintiff testified that he did not know who pulled him off defendant Thomas, slammed him into the wall, or punched him but that when he was turned around, he saw defendants Brumfield, Thomas, Martin, and Newton, as well as Officer Opalka and some other unidentified officers.

11. Plaintiff suffered no broken bones nor did he require any stitches for his injuries.

12. Defendants Thomas and Newton and Officer Opalka prepared Daily Incident Reports detailing the events of the October 31, 1996 incident.

ted a Report of Extraordinary Occurrence for review by Superintendent Vaughn and a memorandum to Graterford's Deputy Superintendent for Internal Security.

As a result of the October 31, 1996 incident, plaintiff received Misconduct No. 609603 ("Misconduct Two"). After a two-day hearing, the hearing examiner found plaintiff guilty of assault as charged in Misconduct Two, sanctioned him to ninety days of disciplinary custody in the Restricted Housing Unit ("RHU"), i.e., from October 31, 1996 to January 29, 1997, and assessed his inmate account in an amount equal to that incurred for Thomas' medical expenses. Plaintiff appealed the hearing examiner's decision to the Graterford PRC, which sustained the decision. Plaintiff then appealed the misconduct to Superintendent Vaughn, who also affirmed the finding of guilty for the misconduct. Plaintiff submitted a final appeal of the decision regarding Misconduct Two to the Central Office Review Committee ("CORC"), which dismissed plaintiff's appeal.

While plaintiff's appeal was pending, plaintiff received two additional misconducts for improper behavior. On December 6, 1996, plaintiff received Misconduct No. 863522 ("Misconduct Three") for assaulting Corrections Officer P.H. Bisbee, refusing to obey an order, and using abusive language. As a result, plaintiff was sanctioned to ninety days disciplinary custody in the RHU, to run consecutively from the discipline given for assaulting defendant Thomas, i.e., from January 29, 1997 to March 29, 1997.[13] On March 8, 1997, plaintiff received yet another misconduct, Misconduct No. 911783 ("Misconduct Four"), for refusing to obey an order issued by Corrections Officer Cerreta. This time, after a hearing, the hearing examiner

sanctioned plaintiff to sixty days disciplinary custody, running from March 29, 1997 through May 28, 1997. In accordance with DOC policy, the Graterford PRC reviewed plaintiff's status every thirty days. As a result of these various misconducts (Misconducts One through Four), plaintiff remained in disciplinary custody from October 31, 1996 until May 7, 1997.

On May 7, 1997, plaintiff was transferred to Greene. The transfer occurred with the approval of defendant Vaughn and pursuant to prison policy requiring the transfer of any inmate who is involved in an altercation with a staff member. At Greene, plaintiff was immediately placed in administrative custody.[14] Two days after plaintiff arrived at Greene, the Greene PRC held a hearing to consider plaintiff's administrative custody status. This hearing was held "in absentia" because plaintiff allegedly refused to comply with the DOC's policy on tuberculosis ("TB").[15] After the hearing, the Greene PRC concluded that plaintiff should remain in administrative custody indefinitely pending his compliance with the DOC policy on TB and because there was a need for increased control based on his previous misconduct against defendant Thomas. Like the Graterford PRC, the Greene PRC reviewed plaintiff's status in administrative custody every thirty days. Plaintiff never challenged his confinement in administrative custody at Greene to the Central Office Review Committee, the body charged under DOC regulations to hear appeals of the PRC's decision. On February 12, 1998, after submitting to a TB test, plaintiff was released into the general prison population at Greene.

While at Greene, plaintiff frequently complained to the prison authorities of

---

13. On appeal by plaintiff, the Graterford PRC, defendant Vaughn and the CORC sustained the hearing examiner's findings.

14. A prisoner's privileges differ based on whether he is placed in administrative or disciplinary custody. Differences include the size of the cell, the availability of radio, televi-

sion, personal phone calls and personal, non-legal visits.

15. There is some dispute of fact as to whether plaintiff complied with the DOC's policy on TB. Such dispute, however, is not material.

nausea, numbness in his feet, eye problems, and headaches. Plaintiff, however, did not file any grievances claiming that he was denied medical attention to address these complaints. Moreover, at times, after complaining of these medical conditions, plaintiff would refuse medical treatment or fail to keep medical appointments scheduled by the prison authorities.

Plaintiff filed the instant action on August 12, 1998.[16] In his complaint, plaintiff contends that defendants Horn, Vaughn, Brumfield, Matalavage, Thomas, Martin, Newton, and the Graterford PRC conspired to place plaintiff in, acquiesced in plaintiff's placement in, or knew of plaintiff's placement in restrictive housing and/or solitary confinement at Graterford in violation of his Fourteenth Amendment due process rights, First Amendment rights, his Sixth Amendment rights to counsel. Plaintiff further contends that while he was so confined, he suffered "loss of life-giving food, loss of exercise, needless degradation, loss of work opportunities ..., loss of money, loss of schooling and training opportunities, loss of self improvement through reading books of plaintiff's own choice, loss of parole status for release on minimum sentence ...," allegedly in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Compl. ¶¶ 47–53 (Count I). Plaintiff also alleges that defendants Varner, Horn, and the Greene PRC have improperly retained plaintiff in restrictive housing without the benefit of proper review procedures of that confinement, in retaliation for his filing of grievances and statements concerning the oppressive nature of the prison system, and have failed to provide plaintiff with proper health care, all in violation of his First, Sixth, Eighth, Fourteenth Amendment rights. *Id.* ¶¶ 56–65 (count II).

Plaintiff's prayer for relief against defendants Graterford PRC, Horn, Vaughn, Brumfield, Matalavage, Thomas, Martin, and Newton includes, *inter alia,* a request for a declaratory judgment that the defendants have violated plaintiff's constitutional rights, injunctive relief prohibiting those defendants from retaliating against him for filing the instant action, immediate release from confinement, compensatory damages, and punitive damages. Against defendants Varner, Horn, and the Greene PRC, plaintiff seeks, *inter alia,* a declaratory judgment that the defendants have violated plaintiff's constitutional rights, transfer from Greene to "a facility of less confinement," immediate release from confinement, compensatory damages, and punitive damages. After conducting discovery, defendants filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In addition, the court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-

---

**16.** On September 3, 1998, the Commonwealth filed a criminal complaint against plaintiff in Montgomery County accusing plaintiff of aggravated assault, simple assault, harassment and stalking, based on plaintiff's alleged assault of defendant Thomas on October 31, 1996. The complaint was eventually *nol prossed* by the Commonwealth on March 12, 1999.

moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact. To defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." [17] *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In addition, Rule 56 of the Federal Rules of Civil Procedure imposes on the non-moving party "the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment." *Jones v. Sheehan, Young & Culp*, 82 F.3d 1334, 1338 (5th Cir.1996).

## III. DISCUSSION

To establish a claim under 42 U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States.[18] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir.2000).[19]

The court will address each of plaintiff's claims seriatim.

### A. *Plaintiff's Claims against the DOC, the Graterford PRC, the Greene PRC and the Individual Defendants in the Their Official Capacities*

Plaintiff asserts claims under § 1983 against the DOC, the Graterford PRC, the Greene PRC, and the individual defendants in their official capacities. In their motion for summary judgment, defendants contend that plaintiff is prohibited from bringing suit in federal court against the DOC, the Greene and Graterford PRCs, and the individual defendants acting in their official capacities pursuant to the Eleventh Amendment. Defendants also contend that the DOC, the PRCs, and the individual officers acting in their official capacities do not constitute "persons" subject to liability under § 1983.

In his response to defendants' motion, which is far from a model of clarity, plaintiff appears to recognize that the Eleventh Amendment bars certain of his claims for monetary damages. However, plaintiff makes the novel argument that because he is seeking prospective injunctive relief, he is somehow also entitled to recover monetary damages from the state in federal court notwithstanding the Eleventh Amendment. *See* Pl.'s Compl. ¶ 54(B); *see also* Pl.'s Resp. to Defs.' Mot. for Summ.J. [hereinafter Pl.'s Resp.] at 25–27.

---

**17.** In articulating this standard and by way of further explanation, the court seeks to remind plaintiff's counsel of the appropriate standard for opposing summary judgment. As the non-moving party, plaintiff "may not rest upon the mere allegations or denials" of his pleadings. *See* Fed.R.Civ.P. 56(e). Thus, contrary to plaintiff's counsel's apparent belief, as evidenced by his response to defendants' motion, simply citing to specific paragraphs contained in the complaint does not suffice to create a genuine issue of fact.

**18.** The statute provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or us-

age, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law; suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

**19.** Here, none of the defendants constituting a "person" under § 1983 dispute that they were acting under color of state law as to the conduct giving rise to plaintiff's allegations.

Plaintiff also argues that the Greene and Graterford PRCs are not arms of the state for purposes of Eleventh Amendment immunity. Plaintiff's arguments fail for several reasons.

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

### 1. The DOC is Entitled to Summary Judgment.

■ The DOC is an arm or agency of the Commonwealth. *Weston v. Commonwealth of Pa. Dep't of Corrections,* No. CIV.A. 98–3899, 1998 WL 695352, at *3 (E.D.Pa. Sept.29, 1998) ("It is well settled that the DOC is a state agency entitled to Eleventh Amendment immunity, in the absence of Pennsylvania's consent to be sued."). Thus, a suit against the DOC is, in essence, a suit against the Commonwealth and is therefore barred by the Eleventh Amendment. *See Hunter v. Commonwealth of Pennsylvania Dep't of Corrections,* 42 F.Supp.2d 542, 547 (E.D.Pa.1999).[20]

---

**20.** In addition, the United States Supreme Court has held that a state may not be sued in either state or federal court under § 1983 for either damages or injunctive relief. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This is so because a state is clearly not a 'person' for § 1983 purposes. *Id.; see also Abdul–Akbar v. Watson,* 4 F.3d 195, 197 n. 2 (3d Cir.1993) (noting that "claims against the Delaware Department of Corrections were dismissed on ground that a state cannot be a 'person' within meaning of 42 U.S.C. § 1983").

### 2. The Greene and Graterford PRCs are Entitled to Summary Judgment.

■ The court further concludes that the Greene and Graterford PRCs are also arms of the state because these entities are run exclusively by and through the DOC. Thus, the PRCs are entitled to Eleventh Amendment immunity as well. *Cf. Thompson v. Medical Staff, Graterford SCI,* No. CIV.A. 96–8684, 1999 WL 722819, at *3 (E.D.Pa. Sept.16, 1999) (dismissing plaintiff's claims against the Medical Staff of Graterford SCI because it "is not an entity which can be sued as a component of the state institution").[21]

### 3. The Individual Defendants in their Official Capacities are Entitled to Summary Judgment.

■ "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the state itself." *Chladek v. Commonwealth of Pa.,* No. CIV.A. 97–0355, 1998 WL 54345, at *5 (E.D.Pa. Jan.29, 1998) (citing *Will,* 491 U.S. at 71, 109 S.Ct. 2304). Moreover, individuals acting in their official capacities are not "persons" under § 1983. *Will,* 491 U.S. at 71, 109 S.Ct. 2304. Therefore, plaintiff's claims seeking monetary damages against the individual defendants in their official capacities are barred.

Plaintiff's argument with respect to injunctive relief against the individual offi-

---

**21.** In addition, the PRC entities are not "persons" as required of defendants in a § 1983 suit. *See Badgett v. Chesney,* No. CIV.A. 97–5277, slip op. at 3 (E.D.Pa. Jan. 23, 1998)(finding that PRC at SCI–Frackville was not a "person" for purposes of § 1983); *see also Kubis v. Pennsylvania Bd. of Probation & Parole,* No. CIV.A. 95–5875, 1996 WL 253324, at *4 (E.D.Pa. May 14, 1996) (dismissing claim against the Pennsylvania Board of Probation and Parole because it is not a "person" under § 1983).

cers sued in their official capacities, however, deserves further consideration. It is true that the Supreme Court has recognized that claims for injunctive relief against state officials in their official capacities are not barred by either the Eleventh Amendment or the § 1983 "person" requirement. *See id.* at 71 n. 10, 109 S.Ct. 2304 (stating that a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State") (internal quotations omitted); *see also Ex parte Young,* 209 U.S. 123, 166–68, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Nonetheless, in this case, the various forms of injunctive relief sought by plaintiff are unavailable to him.

■ First, plaintiff seeks release from imprisonment. Challenges to the very fact of confinement, however, may be made only by filing a petition for habeas corpus. *See Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ("In short, Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.").

■ Second, plaintiff requests that the court order the defendants to cease retaliating against him. This request is moot as to the Graterford defendants because plaintiff is no longer incarcerated at Graterford and plaintiff has not offered any facts of record tending to show that the Graterford defendants have any influence over the Greene defendants. *See Oliver v. Thornburgh,* 587 F.Supp. 380, 381–82 (E.D.Pa.1984) (finding that plaintiff's transfer to another prison rendered moot plaintiff's claims regarding prison conditions at former institution). Similarly, because defendant Varner, the only individual defendant named who was at one time employed at Greene, has resigned from his position as Greene Superintendent, plaintiff's claim for injunctive relief against the Greene defendants is likewise moot. *See Abdul–Akbar,* 4 F.3d at 207 (holding that district court lacked authority to issue injunction when it would not affect the rights of the parties before it).

■ Third, plaintiff seeks transfer to a different facility, contending that Greene is some type of "super-max" facility housing more violent criminals than himself. To the extent plaintiff is now challenging his prison designation or classification, plaintiff has not shown that he has either exhausted any administrative remedies relating to the conditions of his confinement, *see infra,* or that his assignment to Greene, based on DOC policy and availability of space, violated his constitutional rights. Indeed, "[t]he Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution." *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *see also Conner v. Jeffes,* 67 F.R.D. 86, 91 (M.D.Pa.1975) ("A prisoner is not entitled to choose his place of incarceration ...; he is not entitled to a choice of prison accommodations.") (citing *United States ex rel. Tyrrell v. Speaker,* 471 F.2d at 1201 (3d Cir.1973)). Accordingly, because plaintiff is not entitled to the injunctive relief he seeks, judgment is warranted for the individual defendants in their official capacities.

### B. *Plaintiff's Sixth Amendment Claim*

In his complaint, plaintiff appears to set forth a claim that all of the defendants violated his Sixth Amendment rights in some fashion. *See* Compl. ¶¶ 53, 63. Nowhere in the record before the court, however, is there any factual support for such a claim. Furthermore, in his response to defendants' motion, plaintiff does not even address defendants' contention that his Sixth Amendment claim lacks merit. Thus, summary judgment in defendants'

favor with respect to plaintiff's Sixth Amendment claim is warranted.

### C. *Plaintiff's First Amendment Claims*

Plaintiff charges that defendants have conspired to retaliate against him for filing grievances and for pursuing his rights through litigation in violation of his First Amendment rights. Plaintiff points to the misconducts that followed his fight with defendant Thomas and to the fact that several weeks after he filed the instant action, a criminal complaint was filed against him in state court. Defendants argue that plaintiff failed to plead any claim of malicious prosecution, retaliation, or conspiracy in his complaint. Thus, defendants contend plaintiff has waived such claims. The court need not address that argument because even if defendant had alleged such claims, he has failed to support them with facts of record.

▆▆▆▆ It is clear that prison officials may not punish or retaliate against a prisoner simply because the prisoner has chosen to exercise his First Amendment rights. *Wilson v. Horn,* 971 F.Supp. 943, 947 (E.D.Pa.1997); *see also Tirado v. Stepanik,* No. CIV.A. 95–1103, 1997 WL 164261, at *6 (E.D.Pa. Mar.31, 1997). In the instant case, however, plaintiff has presented no evidence of record, as required by Rule 56, demonstrating that defendants either conspired to impose additional misconducts upon him or that the named de-

fendants were responsible for filing the criminal complaint against him in retaliation for his pursuit of his First Amendment rights.

Rather, the evidence of record shows that after plaintiff's altercation with defendant Thomas on October 31, 1996, Officer Bisbee issued Misconduct Three against plaintiff on December 6, 1996. Moreover, it was Officer Cerreta who issued Misconduct Four against plaintiff on March 8, 1997. *See* Defs.' Mem., Exs. D–14, D–15. Plaintiff has not directed the court to any evidence that either Officer Bisbee or Officer Cerreta knew the defendants, knew of the October 31, 1996 incident, or knew of plaintiff's appeals related to the October 31, 1996 incident. Furthermore, the undisputed evidence of record shows that none of the defendants was responsible for the filing of the criminal complaint against plaintiff in September of 1998. *See* Dep. of J. Thomas at 41, 66; Dep. of D. Vaughn at 67. Rather, the Pennsylvania State Police and the District Attorney's Office made that determination. *Id.* Accordingly, plaintiff's First Amendment claims of retaliation fail.[22]

### D. *Plaintiff's Eighth and Fourteenth Amendment Claims*

Plaintiff alleges what appears to be three claims predicated upon either his Eighth or Fourteenth Amendment rights. First, plaintiff claims that he was denied medical treatment while at Greene for the

---

**22.** To the extent plaintiff may be claiming that his transfer to Greene was in retaliation for his filing grievances of the sanctions imposed due to the October 31, 1996 misconduct, the undisputed facts of record show that it was normal prison policy to transfer an inmate who engaged in an altercation with a staff member to another facility. *See* Dep. of D. Vaughn at 74. Plaintiff has not offered any evidence demonstrating that he was singled out for transfer based on this policy or that the prison's policy was applied to him in arbitrary or capricious fashion. In addition, prison officials are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline

and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Moreover, plaintiff's transfer satisfies the reasonable relationship test propounded in *Madison v. Horn,* No. CIV.A. 97-3143, 1998 WL 531830, at *13 (E.D.Pa. Aug. 21, 1998), in that for security reasons, the transfer of an inmate who fought with a corrections officer is a legitimate penological interest, such reason is rationally connected to the transfer, plaintiff was able to continue the grievance process related to Misconduct Two despite his transfer, serious security problems could have resulted if plaintiff remained incarcerated at Graterford, and finally, plaintiff has not set forth any alternatives to transfer. *Id.* at *16–17.

injuries he sustained as a result of the October 31st incident. Second, plaintiff claims that he was placed and held in administrative custody at Greene in violation of his Eighth and Fourteenth Amendment Rights. Third, plaintiff claims that the October 31st incident violated his Eighth Amendment right to freedom from excessive force.

1. *Plaintiff has Failed to Exhaust his Administrative Remedies with Respect to his Medical Treatment and Administrative Custody Claims.*

■ Although defendants concede the plaintiff has exhausted all administrative procedures with respect to Misconduct Two, defendants contend that plaintiff has not exhausted to final review any of his claims concerning his medical treatment or his administrative custody status while at Greene. As support for this contention, defendants attach the declaration of Robert S. Bitner, Chief Hearing Examiner for the DOC, who states that he is responsible for handling all inmate appeals and that he personally reviewed plaintiff's records, noting the above status of plaintiff's administrative efforts. *See* Decl. of Robert S. Bitner, ¶¶ 8–9.

In response, plaintiff appears to be arguing that because his medical treatment and administrative custody at Greene "flowed proximately" from the October 31, 1996 incident, which was the subject of Misconduct Two, and because he exhausted his appeals with respect to Misconduct Two, he need not proceed any further through the DOC's administrative channels.[23] *See* Pl.'s Resp. at 34–35. Plaintiff cites no authority in support of this proposition. Nor does plaintiff dispute that the

DOC had in place, at all relevant times, these administrative procedures.

Rather, plaintiff argues that his attempt to solicit the Montgomery County District Attorney's Office to investigate what he characterizes as "wrongdoings" at Graterford demonstrates that he has exhausted his administrative remedies.[24] In further support of his position, plaintiff points to two exhibits attached to his response, allegedly demonstrating that he has exhausted his administrative procedures in full. The first exhibit is a letter from defendant Vaughn referring to an appeal to grievance # GRA–0287–97. *See* Pl.'s Resp., Ex. 29. The letter provides no detail as to what condition plaintiff was grieving. Likewise, the second exhibit, a letter from defendant Horn, regarding grievance # GRA–0496–97, stating that defendant Horn concurs with the findings of the Central Office Review Committee and finding that the action taken by the staff at the institutional level should be upheld, offers the court little guidance as to the substance of plaintiff's grievance. *See* Pl.'s Resp., Ex. 30.

Finally, plaintiff argues that "sometimes the exhaustion doctrine does not apply when the administrative remedy is inadequate." *Id.* at 37. This argument must be rejected.

The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The DOC has in place (and had in place at the time of facts giving rise to the instant allegations) a

---

**23.** Although it is not entirely clear, perhaps plaintiff is arguing that his medical conditions are "damages" flowing from the alleged "excessive force" occurring on October 31, 1996 incident and not a separate cause of action.

**24.** Plaintiff points to a letter from the Montgomery County District Attorney's office to the Pennsylvania State Police, which states

that a complaint from plaintiff had been received. *See* Pl.'s Resp., Ex. P–27. Plaintiff's complaint is not included for the court's review. Plaintiff then directs the court to a letter to plaintiff from Hearing Examiner Bitner stating that the institution could provide plaintiff with a proper address.

Consolidated Inmate Grievance System available to all state prisoners, which is set forth in Department of Corrections Administrative Directive (DC–ADM 804). *See* Defs.' Mem., Ex. D–24. This grievance system allows prisoners to pursue informal resolution of problems concerning prison conditions, to then file a written grievance with the prison administration, and, if the matter is not resolved to the prisoner's liking, to seek an appeal. *Id.* The DOC also has in place a policy covering Administrative Custody Procedures, (DC–ADM 802), which sets forth a hearing process providing for clear notice to inmates of the reason for their confinement in administrative custody. *See* Defs.' Mem., Ex. D–17. As with the Inmate Grievance System, a prisoner is entitled to appeal a decision initiating or continuing his confinement in administrative custody. *Id.*

The Third Circuit recently addressed the PLRA's new exhaustion requirement in *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000). There, the Third Circuit held that before a plaintiff can bring a suit pursuant to § 1983, he or she must exhaust his or her administrative remedies, regardless of whether exhaustion would be "futile." *Id.* at 67–78.

Here, in light of the declaration of Robert Bitner and based upon the current record, plaintiff has failed to raise a genuine issue of fact as to whether he has exhausted his administrative remedies with respect to his alleged medical mistreatment or his confinement in administrative custody while at Greene. Moreover, the Third Circuit's recent decision forecloses plaintiff's argument that exhaustion is inapplicable where the administrative channels would be inadequate. Accordingly, plaintiff's claims alleging medical mistreatment or his confinement in administrative custody while at Greene in violation of his Eighth Amendment rights must be denied.[25]

---

25. In any event, the court notes that plaintiff's Eighth Amendment claim based on a lack of lack of medical treatment fails because plaintiff admitted during his deposition that for his various ailments, he received medication and medical treatment. *See* Pl.'s Dep. at 34, 64–71. Indeed, plaintiff conceded that he often failed to attend medical appointments that he had requested. *Id.* Thus, plaintiff would be unable to show these defendants acted with "deliberate indifference" to one of plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Moreover, plaintiff has not alleged that the individual defendants, particular defendant Varner who is the only Greene official named in the complaint, took any part in the alleged withholding of medical attention. *See Freed v. Horn*, No. CIV.A. 95–2824, 1995 WL 710529, at *4 (E.D.Pa. Dec.1, 1995) (granting summary judgment in favor of prison officials because facts showed that they did not personally participate in treating plaintiff's medical conditions).

In addition, plaintiff's ten-month confinement in administrative custody at Greene does not represent such an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life" so as to trigger due process protection. *See, e.g. Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and finding that plaintiff's fifteen-month confinement in administrative custody did not deprive plaintiff of any "state created liberty interest, and that the failure to give [plaintiff] an administrative hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution"); *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.Pa.1997) (stating that inmate "has no federal constitutional right to a particular custody status"); *Smith v. Luciani*, Nos. CIV.A. 97–3037 and 97–3613, 1998 WL 151803, at (E.D.Pa. Mar. 31, 1998) ("Prisoners, however, have no constitutional right to a hearing before a term of seven months administrative custody is imposed, because it is not atypical of the types of deprivations expected while in prison") (citing *Griffin* ).

Further, to the extent plaintiff is challenging the disciplinary action resulting from his various misconducts he received while at Graterford, plaintiff was afforded advanced written notice of those misconducts, an opportunity to call witnesses and to offer evidence at a hearing, and he was supplied with written statements of the decisions that pointed to the evidence relied upon by the fact finder and the reasons for the action. The decisions are also supported by some evidence in the record by way of misconduct reports, live testimony, and plaintiff's acknowledgment that the altercations occurred, albeit while dis-

2. *Plaintiff Eighth Amendment Claim of Excessive Force against Defendants Thomas, Brumfield, Newton, and Martin in their Individual Capacities*

Plaintiff alleges that the force used against him by defendants Thomas, Martin, Brumfield, and Newton during the October 31st incident violated his Eighth Amendment rights.[26] *See* Pl.'s Resp. at 50. In response, these defendants argue that plaintiff's injuries, which defendants characterize as de minimis, do not rise to the requisite level of harm sufficient to constitute an Eighth Amendment violation. *See* Def.'s Mem. at 27. In addition, defendants argue that the use of force employed by defendants was in compliance with DOC policy and not intended to punish or harm plaintiff. *Id.* at 29–30. Thus, defendants claim that they lacked the requisite state of mind for an Eighth Amendment claim.

■ When deciding whether an Eighth Amendment violation has occurred, the court must first determine, based on the facts of record, if the prisoner was subjected to unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 298–303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, the evidence must show that defendant had a culpable state of mind. *Id.* In other words, did the defendant act with deliberate indifference. *Id.*

■ Accepting plaintiff's version of the facts as true, the court concludes that a reasonable jury could find that the actions of defendant Thomas, in initiating a fistfight with an inmate during a verbal argument, punching plaintiff in the face and head with sufficient force that plaintiff fell to the ground, and those of defendants Martin and Newton, in slamming plaintiff face first into a concrete wall, and punching him while he was restrained against the wall, constituted more than justifiable force under the circumstances and were not made in good faith.[27] To the extent other factors such as departmental policy on the use of force necessary when exigent circumstances exist and the security need

agreeing with the correction officers' versions. Thus, as to those claims, if asserted, the court, concludes that plaintiff received all the process he was due. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

**26.** To the extent plaintiff contends that his Eighth Amendment rights were violated by a "lack of life-giving food," loss of exercise, loss of work, schooling, and self-improvement opportunities, plaintiff's claims cannot stand. First, plaintiff is not alleging that defendants fail to provide him with three meals each day. Likewise, plaintiff fails to explain why the food he does receive is not "life-giving." Second, plaintiff admitted that he received one hour of exercise per day. *See* Compl. ¶ 36. Prison officials are only responsible for providing "humane conditions of confinement," that is, adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff further contends that the combination of these allegations constitute an Eighth Amendment violation. A combination of conditions of confinement may present an Eighth Amendment violation, however, only "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need...." *Wilson v. Horn*, 971 F.Supp. 943, 946 (E.D.Pa.1997) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). None of the conditions of confinement, as vaguely alleged by plaintiff, meet this standard.

**27.** Although neither plaintiff nor his witness were able to identify the officer(s) who allegedly slammed plaintiff into the wall and began punching him, defendants Martin and Newton admit, either by deposition, or in incident reports that they filed or that other corrections officers filed, that they were responsible for subduing plaintiff and removing him from defendant Thomas. Drawing all inferences in plaintiff's favor, a rational trier of fact could conclude that defendants Newton and Martin were the individuals who allegedly slammed plaintiff into the wall and punched him. To the extent that neither plaintiff nor any other witnesses can identify defendant Brumfield as being involved in the punching or restraining of plaintiff against the wall or encouraging any other officers to do so, however, summary judgment on plaintiff's Eighth Amendment alleging excessive force must be granted in defendant Brumfield's favor.

to restrain plaintiff quickly when other unfettered prisoners were present in the area bears on defendants' state of mind and the reasonableness of the force employed, the court concludes these are genuine issues of fact that must be resolved by a jury.

Moreover, the absence of a serious injury to plaintiff, although of evidentiary relevance, does not end the court's inquiry. *See Brooks v. Kyler,* 204 F.3d 102, 108 (3d Cir.2000) (rejecting that absence of medical evidence of violent beating is conclusive proof of no constitutional violation because "a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible . . . injuries that were de minimis"). Rather, plaintiff's injuries, when compared to those suffered by the inmate in *Hudson,* are serious enough to state an Eighth Amendment violation. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (finding minor bruises, swelling of face, mouth and lips, and cracked dental plate not de minimis injuries for Eighth Amendment purposes).[28]

E. *Plaintiff's Claims against Defendants Horn, Varner, Vaughn, and Matalavage in their Individual Capacities as Supervisors*

Plaintiff also asserts various claims for monetary damages against defendants Horn, Varner, Vaughn, and Matalavage in their individual capacities apparently in their roles as supervisors of the corrections officers. In their motion for summary judgment, defendants argue that defendants Horn, Varner, Vaughn, and Matalavage cannot be held liable under § 1983 because they lack personal involvement in plaintiff's alleged constitutional deprivations. In response, plaintiff points to defendant Vaughn's deposition testimony that he signed the order transferring plaintiff to Greene, that it was defendant Vaughn's job to review all appeals from inmates, and that defendant Vaughn signed three documents relating to the October 31, 1996 incident. *See* Pl.'s Mem. of Law at 39, 45. Plaintiff further points to paragraph 41 of plaintiff's complaint which states, "Upon the Plaintiff's admission to SCI Greene, the Warden, Benjamin Varner, also became aware, upon defendant's admission, that his transfer was due to the alleged assaultive behavior/misconduct of 10/31/96 that precipitated the disciplinary custody that he endured at SCI Graterford." *Id.* at 39 (citing Compl. ¶ 41). Plaintiff does not even address defendants' argument that defendant Horn lacked personal involvement.[29] Finally, at his deposition, plaintiff testified that defendant Matalavage's involvement in plaintiff's alleged constitutional violations consisted of interviewing plaintiff following the October 31st incident and failing to file a criminal complaint against the officers involved in the October 31st incident although asked to do so by plaintiff.

---

**28.** The court notes that defendants have raised a qualified immunity defense as well. Under the doctrine of qualified immunity, prison officials are generally immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In considering a qualified immunity defense, the court must first "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all," and if so, next "determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). However, with regard to plaintiff's claims of excessive force, the defense of qualified immunity is not implicated because the right to be free of excessive force was clearly established at the time of the incident.

**29.** In fact, at plaintiff's deposition, plaintiff's counsel improperly refused to allow plaintiff to answer defendants' counsel inquiry as to why plaintiff was suing defendant Horn. *See* Pl.'s Dep. at 74–78. *See Hall v. Clifton Precision,* 150 F.R.D. 525, 528 (E.D.Pa.1993).

■■■ "It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates a citizen's constitutional rights." *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 263 (3d Cir.1995) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Rather, a plaintiff must show some "affirmative conduct" by a defendant. *Id.* For instance, plaintiff must show that the individual defendant participated in violating plaintiff's constitutional rights, directed others to violate those rights, or that, as a superior, had knowledge of and acquiesced in the violations of plaintiff's rights as undertaken by his subordinates. *See Smith v. Luciani*, No. CIV.A. 97–3037, 1998 WL 151803, at *6 (E.D.Pa. Mar.31, 1998) (quoting *Moon v. Dragovich*, No. CIV.A. 96–5525, 1997 WL 180333, at *2 (E.D.Pa. Apr.14, 1997), *aff'd*, 178 F.3d 1280 (3d Cir.1999)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988).

■■■ With that standard in mind, plaintiff's claims against defendants Horn and Varner are easily dismissed. Plaintiff has offered no evidence of record demonstrating that these individuals had any personal involvement other than that of a supervisor. Plaintiff does not direct this court to any evidence of record showing that defendants Horn or Varner took affirmative steps to violate his constitutional rights, that they directed others to violate his rights, or that they acquiesced in violations of those rights by their subordinates. That these defendants may have simply signed various documents concerning plaintiff, without more, does not suffice. *See Mabine v. Vaughn*, 25 F.Supp.2d 587, 592 (E.D.Pa.1998) (granting summary judgment to prison superintendent because he was being sued for his "supervisory role"). Further, plaintiff's mere conclusory allegation during his deposition that defendant Varner was aware of the alleged constitutional violations and nonetheless kept plaintiff in restricted housing is insufficient to defeat a motion for summary judgment.

Turning to defendant Matalavage, plaintiff testified that he is suing defendant Matalavage "[b]ecause [plaintiff] asked to file a criminal complaint and [defendant Matalavage] wouldn't file a criminal complaint for [plaintiff]." *See* Pl.'s Dep. at 80. Although it is clear that prisoners are entitled to access to the judicial system, plaintiff has not identified a duty on defendant Matalavage to personally file a criminal complaint for plaintiff simply upon plaintiff's request. Plaintiff has neither provided any particulars as to what defendant Matalavage allegedly refused to do nor does plaintiff allege that defendant Matalavage was the prison official responsible for ensuring the filing of prisoners' criminal complaints. Accordingly, summary judgment in favor of defendant Matalavage is warranted.

Plaintiff's claims against defendant Vaughn focus on defendant Vaughn's role in upholding the decisions of the hearing examiner and the Graterford PRC with respect to Misconduct Two and his approval of the order transferring plaintiff to Greene. *See* Pl.'s Resp. at 39. Because, as discussed above, only plaintiff's claims against the individual corrections officers alleging excessive force in violation of the Eighth Amendment survive summary judgment and because plaintiff has offered no evidence demonstrating that defendant Vaughn either encouraged or participated in the October 31, 1996 incident, the claims against defendant Vaughn lack merit. *Cf. Smith*, 1998 WL 151803, at *7 (dismissing plaintiff's claims that the defendant superintendent was liable for upholding decisions finding that plaintiff had violated prison policy because underlying claim lacked legal merit).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted as to defendants DOC, Greene PRC, Graterford PRC, Horn, Matalavage,

Varner, Vaughn, and Brumfield. Summary judgment will also be granted as to defendants Thomas, Martin, and Newton in their official capacities as to all claims and with respect to plaintiff's First, Sixth, and Fourteenth Amendment claims in their individual capacities. The only claim remaining is plaintiff's claim against defendants Thomas, Martin, and Newton alleging excessive force with respect to the incident occurring on October 31, 1996, in violation of plaintiff's Eighth Amendment rights.

An appropriate order shall issue.

### ORDER

**AND NOW**, this 31st day of **May, 2000**, upon consideration of defendants' motion for summary judgment (doc. # 23), and plaintiff's response, it is hereby **ORDERED** that defendants' motion is **GRANTED in PART** and **DENIED in PART**. Specifically:

1. Judgment is entered in **FAVOR** of defendants Pennsylvania Department of Corrections, Martin F. Horn, Donald Vaughn, Captain Dennis Brumfield, Lieutenant Gerald Matalavage, the Program Review Committee at SCI–Graterford, the Program Review Committee at SCI–Greene, and Benjamin Varner and **AGAINST** plaintiff on all claims;

2. Judgment is entered in **FAVOR** of defendants Thomas, Martin, and Newton in their official capacities and **AGAINST** plaintiff on all claims;

3. Judgment is entered in **FAVOR** of defendants Thomas, Martin, and Newton in their individual capacities and **AGAINST** plaintiff on plaintiff's claims alleging violation of the First, Sixth, and Fourteenth Amendments;

4. Summary Judgment is **DENIED** solely with respect to plaintiff's Eighth Amendment claims alleging excessive force against defendants Thomas, Martin, and Newton in their individual capacities; and

5. Defendants' motion for leave to file a reply brief (doc. # 30) is **GRANTED.**

**AND IT IS SO ORDERED.**